Hay *v.* The Cohoes Company.

SAME TERM. *Before the same Justices.*

## HAY *vs.* THE COHOES COMPANY.

A corporation is liable for a tort committed by its authorized agents.

If the wrongful act was done by the direction of the corporation, trespass will lie.

To make a master liable for the negligence or unskilfulness of his servant, while engaged in his lawful business, there must be an allegation of negligence or unskilfulness.

A master is not liable for the wilful acts of his servants, done without his direction.

Hay. *v.* The Cohoes Company.

Where the fee of a public street is in private persons, they may lawfully make a race-way across it, to carry water to a factory; but in so doing they must not disturb the servitude or easement of way. If they do, any one who sustains a special and particular injury may maintain an action.

Where stones, dirt, &c. are thrown upon the land of another, by persons engaged in doing an unlawful act—as erecting or continuing a nuisance—such persons are liable for all the damage sustained thereby.

So if one, in blasting rocks on his own land, throw them upon his neighbor's land, an action will lie; except in extreme cases, attributable to inevitable accident.

Although a person has a right to make a proper use of his own property, yet he is not justified in disturbing the soil of the adjacent owner, in its natural state, or in casting substances upon it.

Where a person sustains damage in consequence of the act of another in wrongfully obstructing a street by digging and blasting therein, and his buildings are injured by the throwing of stones, &c. against them—both species of injury being the result of the same acts—the whole transaction, with its consequences, may be set forth in one count of the declaration, in an action on the case.

The injury, in such a case, is both direct or immediate, and consequential.

And even if the stones, &c. are alleged to have been thrown from the defendant's own land, *it seems* the plaintiff will not be obliged to bring two actions to recover all the damages sustained by him; but may recover for both injuries, in an action on the case.

ERROR to the Albany common pleas. The action was case, by Hay against The Cohoes Company, for injury done to the plaintiff's dwelling house and premises, by the defendants, in digging a canal or race-way. The declaration contained two counts, and alleged that the plaintiff was possessed of a dwelling house situated on a public street, and that the defendants, by their agents and servants, unjustly and wrongfully cut a deep canal across the street and kept it open for five months, by which the plaintiff was obliged to go further to transact business, obtain necessaries, &c. It also charged that the defendants, by their agents and servants, wrongfully and unjustly blasted and threw large quantities of gravel, slate and stones upon the dwelling house of the plaintiff, breaking the windows, chimney, &c. of the house, and also shut and darkened the windows of the house, &c. Plea, not guilty.

On the trial, the plaintiff proved a lease in fee, from the defendants to one Baker, of the two lots on which the house where the plaintiff resided was situated, and that in November, 1844, and up to April, 1845, he resided there. That Factory-street

Hay *v.* The Cohoes Company.

had been used as a public street for at least eight years, and run from Main-street to the Erie canal. That lots 4, 5 and 6 were on this street. The plaintiff's residence was a two story double house on 4 and 5, the defendants owning No. 6. No. 5 adjoined No. 6 on the west. A canal or race-way to supply a new factory of the defendants, and about 450 feet long, 20 feet wide and 23 feet deep, was cut in the years 1844 and 1845. It was commenced in November, 1844, and completed in April, 1845. It crossed Factory-street and No. 6, and passed within six feet of the plaintiff's house. One Van Zyle contracted with the president of the company to build the race-way. The president staked out the route and was on the ground occasionally during the progress of the work. No bridge was thrown across the race-way until in April, and from some time in Nov. until that time, the plaintiff had no way from his dwelling except by the tow path of a canal. The bridge could have been built by the first of January. Factory-street and lot No. 6 were slate rock except a small part of the surface. The blasting was continued from November till April, and from one to three times an hour every day. The men excavating put upon the plaintiff's windows rough blinds, which they closed when firing the blasts. The blinds were usually shut about five minutes. The gravel and rocks thrown up by the blasts, broke the plaintiff's windows, knocked down part of his chimney, and did other injury. Plaintiff used before to get his milk from a milk pedler. During the excavation he did not have any. There was a well on the line between Nos. 5 and 6, which supplied the plaintiff with water. About one-fourth of it was on No. 5. The excavations were through and below this, and it of course became useless or destroyed. The testimony in relation to the well was objected to. The plaintiff had a daughter quite sick four or five months, and the blasting affected her some, though not seriously. The defendants offered to show that Van Zyle, by his contract with them, was to pay all damages done by blasting; which offer was rejected by the court.

The defendants moved for a nonsuit, on several grounds, and the court granted the motion.

*E. F. Bullard*, for the plaintiff in error.

*D. Wright*, for the defendant in error.

*By the Court*, HAND, J.  The intention of the pleader, in drawing the declaration in this case, is not perfectly plain. Negligence is not averred, but it is charged that the defendants wrongfully and unjustly obstructed the street, by which the plaintiff was injured; and in the same count it is further charged, that by blasting rocks were thrown on to the plaintiff's house, &c.; but it is not stated from what point, whether while digging in the street or on No. 6, the rocks were thrown. The last allegation is in its nature a trespass. Even standing on one's own land and throwing stones from thence on to that of another, is trespass. (*Lambert* v. *Bessey, Sir T. Raym.* 421. *Pickering* v. *Rudd,* 1 *Stark. Rep.* 56. *Prewitt* v. *Clayton,* 5 *Monroe,* 4. *Newsom* v. *Anderson,* 2 *Iredell,* 42. *Arguendo,* 11 *Mod.* 74, 130. 15 *Petersd.* 126. 1 *Cowen's Tr.* 365.) Thus in *Lambert* v. *Bessey*, a case of trespass *quare clausum fregit* is cited, where the defendant pleaded " he had an acre lying next the six acres, [locus in quo] and upon it a hedge of thorns; he cut the thorns and they *ipso invito* fell upon the plaintiff's land, and the defendant took them off as soon as he could, which is the same trespass; and the plaintiff demurred; and it was adjudged for the plaintiff: for though a man do a lawful thing, yet if any damage do hereby befall another, he shall answer it, if he could have avoided it. As if a man fall a tree, and the boughs fall upon another *ipso invito*, yet the action lies. If a man shoot at butts, and hurt another unawares, an action lies. I have land through which a river runs to turn your mill, and I lop the sallows growing upon the river side which accidentally stop the water, so as your mill is hindered, an action lies. If I am building my own house and a piece of timber falls on my neighbor's house and breaks part of it, an action lies."

But the fair construction of this declaration is to treat it as *case* against the company for the act of its servants. No doubt

a corporation may be liable for a tort committed by its authorized agents. (*Angell & Ames on Corp.* 303, 308. 7 *Cowen,* 485. 16 *East,* 6. *Cases cited by the Chancellor in Mayor of New-York* v. *Bailey,* 2 *Denio,* 439.) Some of the books intimate that this can only lie for negligence. But such cannot be the law. Indeed it is pretty well settled that trespass will lie. And although a master is not liable for the wilful act of his servant, yet as we have seen, intent is not necessary to a trespass. Inevitable accident only will excuse. (*Wakeman* v. *Robinson,* 1 *Bing.* 213. *Leame* v. *Bray,* 3 *East,* 593.) Intent only goes to the damages. (*Mr. J. Bosanquet in James* v. *Campbell,* 5 *C. & P.* 372. 2 *Cowen's Tr.* 1007. *Sedgwick on Dam.* 549.) If it is intended to make a master liable for the negligence or unskilfulness of the servant while engaged in his lawful business, there must be an allegation of negligence, or unskilfulness. That is omitted in this case. The defendants, if liable at all then, are liable on the ground that the acts complained of were their acts. And if the proof will sustain the declaration, if a good cause of action is set out, however inartificially, the issue should have been passed upon by the jury. From the testimony in this case it is very clear that the location and digging of the race-way were the acts of the company. The company was building a factory, and this race-way was to supply it. The proposals of Van Zyle were accepted by the defendants, and the president not only located the route, but directed where the excavated matter should be deposited ; and the work was done to his satisfaction. This then was the act of the company, or at least the evidence should have gone to the jury on that point. Had the action been for negligence, as this was improving real estate, probably the defendants would have been liable without any such direct superintendence or interference. (*Mayor of New-York* v. *Bailey,* 2 *Denio,* 433.)

The defendants' counsel contend, that the act of incorporation authorized the company to cut this race-way. (*Laws of* 1820, *ch.* 90.) The 5th section of that act authorizes them to cut canals for hydraulic purposes, and to communicate with

the Erie canal, &c. This section merely defines some of the powers of this corporation. This power of making canals is given in this case, but the section confines it to the land of the company. It gives them the same powers as are possessed by an individual, in this respect, and no more ; except that their agents are not indictable for a nuisance in drawing water from the river or communicating with the state canal as authorized by the act. Indeed, the 4th section expressly reserves the rights of others. The legislature did not in any degree authorize the company to take private property, or infringe upon the rights of others. That would be giving the property of A. to B. for private purposes, which cannot be done. (*Taylor* v. *Porter*, 4 *Hill*, 140. *Varick* v. *Smith*, 5 *Paige*, 146, 159. *Wilkinson* v. *Leland*, 2 *Pet.* 658. 2 *Kent*, 340.) The legislature of this state, it is believed, has never exercised the right of eminent domain in favor of mills of any kind. (*See Sen. Doc. No.* 49, 1847.) Sites for steam engines, hotels, churches, and other public conveniences might as well be taken, by the exercise of this extraordinary power. And among the states, Massachusetts and Maine, probably, are the only exceptions to this rule, and there the principle was adopted (in Mass.) nearly a century and a half ago, when the country was a wilderness. A few of the other states have afforded facilities in such cases, but only to a limited extent.

Nor does the case show that any such right over the property was reserved by the defendants, in the lease to Baker. Indeed, as the plaintiff does not show that he held under Baker, that evidence does not seem to affect the case at all. The plaintiff's possession, however, was sufficient. The defendants then stand in the same position as to their civil rights as natural persons. As the case appears before us, Factory-street was like any other public street, and whether it was properly laid out by public authority, or dedicated, makes no difference. If the fee was in the defendants, they could bring their water under it, but in so doing must not disturb the servitude or easement of way. If they do, any one, who sustains special and particular injury, may maintain an action. (*Duncan* v.

*Thwaites,* 3 *B. & Cress.* 584. *Mills* v. *Hall,* 9 *Wend.* 315. *Myers* v. *Malcom,* 6 *Hill,* 296.) There was testimony upon this point of special damage, which I think should have gone to the jury. This error is sufficient to reverse the judgment. But as the other points made at the trial may arise again, a brief examination may be useful.

If the stones, &c. were thrown by the defendants while doing an unlawful act, as erecting or continuing a nuisance, they are liable for all the damage the plaintiff sustained thereby. (*Myers* v. *Malcom, supra.*) And this, it seems, without averring or proving negligence. (*Id.*) On the other hand, if the injury was committed by the defendants while cutting through No. 6, it presents a more serious question. Negligence is not charged, in terms, in the declaration. Where injury is done by the negligence of servants, that is usually alleged. (*See Aldridge* v. *Great West. R. Co.* 3 *M. & Gr.* 520, 521.) If it was by the wilful act of the servants without their direction, the defendants are not liable at all. (*Wright* v. *Wilcox,* 19 *Wend.* 345, *and cases there cited.*) If the rocks were thrown directly upon the plaintiff's land without negligence, it may be deemed immediate, although it be not wilful. If the defendants directed the work and kept it under their supervision, trespass would lie. But if this happened without the master's command, or under his supervision, it is very questionable whether trespass would lie. (*Morley* v. *Gaisford,* 2 *H. Bl.* 442. 1 *East,* 108. 1 *Ch. Pl.* 121.) Though, where the owner sat by the side of his servant who drove the horse, and the horse ran away and injured others, it was held trespass would lie against the master, as being his act. (*Chandler* v. *Broughton,* 1 *Cromp. & Mees.* 29.) If the defendants wished to raise this objection to the plaintiff's recovery, the question whether the servants acted under the defendants' command, should have been put to the jury. But I think the charge of throwing rocks, &c. on to the house may be considered as referring to the blasting in the street. After stating the cutting and blasting in the street, and the obstruction thereof, the allegation is, that the defendants " then and there" blasted, &c. repeating the former allegation as to time,

If this is so, then the obstruction of the street and the injury to the plaintiff's house were the result of the same acts, and the whole transaction, with its consequences, can be set forth in one count, which, as it is not alleged to be wilful, may be in case. The injury is both direct or immediate and consequential. (*Panton* v. *Holland*, 17 *John.* 92. *Percival* v. *Hickey*, 18 *Id.* 257. *McAllister* v. *Hammond*, 6 *Cowen*, 342. *Wilson* v. *Smith*, 10 *Wend.* 324. *Rogers* v. *Imbleton*, 5 *Bos. & Pul.* 117. *Williams* v. *Holland*, 6 *Car. & P.* 23. *S. C.* 10 *Bing.* 112. 1 *Chit. Pl.* 146. *Cowen's Treat.* 306. 2 *R. S.* 553.) Particularly as there is no allegation that the street was the plaintiff's soil. And even if the stones were thrown from No. 6, I am inclined to think that the plaintiff is not obliged to bring two actions to recover all his damage, and that an action on the case lies for the entire injury. It is charged as the act of the servant, and though the injury be immediate, and notwithstanding shutting the blinds shows the injury was anticipated, yet we are not to intend the injury was wilful. The immediate cause (in that case) was on the defendants' land, and I think the injury may well be considered consequential for the purposes of this action. If it was a clear case of wilful trespass on the land of the plaintiff, by the defendants, unconnected with any other circumstances, an objection to an action on the case could have been taken at the trial. (*Wilson* v. *Smith*, 10 *Wend.* 324.) Nor, it would seem, does the provision of the statute authorizing the action of trespass on the case to be brought for any wrongful act producing an injury to the person, personal property, or rights of another, &c. for which trespass would lie, (2 *R. S.* 553, § 16,) reach such a case. A fair legal construction of that section will hardly extend it to a direct injury to the realty. The word "rights" is there used, no doubt, in its technical, legal sense. (3 *Cruise*, 368. *Co. Litt.* 265, *a*, to 266 *a*. *Plowd.* 88. 2 *Bl.* 196, *et seq.* 3 *Id.* 190. *Hill. El. of Law*, 194. 3 *Tom. Law Dic.* 396.) Though if there has been a subsequent consequential injury, not the immediate result of the first act, the force might be waived, as suggested by Mr. Justice Blackstone in *Scott* v. *Shepherd*, (2 *Bl. R.* 897.) *Veeder* v.

*Veeder,* (1 *Denio,* 261.) 1 *Chit. Pl.* 146. If one, in blasting rocks on his own land, throw them upon his neighbor's, no doubt an action will lie, unless, perhaps, in an extreme instance, attributable to inevitable accident, if that could ever happen in such cases. One cannot dig his land so near mine that mine shall fall on to his. He must not disturb the natural state of my soil by removing it or covering it up with his. (2 *Roll. Abr.* 565. *Thurston* v. *Hancock,* 12 *Mass. Rep.* 220. *And see Lambert* v. *Bessey, and the other cases above cited.*)

The cases most favorable to the defendants, as *Hancock* v. *Thurston,* (12 *Mass.* 220;) *Panton* v. *Holland,* (17 *John. Rep.* 92;) *Wyatt* v. *Harrison,* (3 *Barn. & Ad.* 871;) and *Lasala* v. *Holbrook,* (4 *Paige,* 169,) do not allow a person to cross the line and do a direct injury to the adjoining owner. This would be the plainest violation of another's rights. A man may make a proper use of his own, and others must take notice of his right to do so. But farther than this he cannot go. Beyond this line liability commences. Disturbing the soil of the adjacent owner in its natural state, or casting substances upon it, is not justifiable.

The judgment must be reversed, and a new trial granted in this court.

---

OSWEGO GENERAL TERM, May, 1848. *Pratt, Gridley, and Allen,* Justices.