THE STATE v. THE MORRIS AND ESSEX RAILROAD COMPANY.

1. An indictment will lie against a corporation aggregate for a misfeasance.

2. An incorporated railroad company is indictable for a nuisance in erecting and continuing a building, and placing and leaving their cars in the public highway.

3. A corporation is liable *civiliter* for *torts* committed by its servants or agents, precisely as a natural person; and it is liable for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under seal, nor a vote of the corporation, constituting the agency or authorizing the act. (Per GREEN, Chief Just.)

4. Regularly a part of the judgment upon conviction for a nuisance is, that the nuisance be abated. (Per GREEN, Chief Just.)

The indictment in this case was found in the Morris Oyer and Terminer. The defendants having been convicted and sentenced, the record was removed into this court by writ of error. The indictment, which is the only part of the record material to an understanding of the case, is as follows :

Morris Oyer and Terminer and General Jail Delivery, August term, 1850.

Morris county, *ss.*—The grand jurors of the state of New Jersey, in and for the body of the county of Morris aforesaid,

upon their oaths and affirmation present, that the Morris and Essex Railroad Company, late of the township of Rockaway, in the county of Morris, on the twenty-fifth day of August, in the year of our Lord one thousand eight hundred and forty-eight, with force and arms, at the township of Rockaway, in the county of Morris aforesaid, and within the jurisdiction of this court, unlawfully did erect and build, or cause and procure to be erected and built, a certain wooden messuage and tenement, a certain part whereof, containing in length sixteen feet, and in depth ten feet, in and upon a certain ancient common highway, situate in the township of Rockaway aforesaid, leading from the village of Denville to the village of Rockaway, used for all the good people of this state to go, return, pass, repass, ride, and labor, with their horses, coaches, carts, and carriages, at their free will and pleasure, and the said part of the said messuage and tenement so erected and built, and caused and procured to be erected and built by them, the said the Morris and Essex Railroad Company as aforesaid, in and upon the said ancient and common highway, at the township of Rockaway aforesaid, in the county of Morris aforesaid, they, the said the Morris and Essex Railroad Company, from the said twenty-fifth day of August, in the year of our Lord one thousand eight hundred and forty-eight, until the day of the taking of this inquisition, with force and arms, at the township of Rockaway aforesaid, in the county of Morris aforesaid, and within the jurisdiction of this court, unlawfully and injuriously did continue, and yet do continue: by reason and by means whereof the said ancient and common highway was during all the time aforesaid, at the township of Rockaway aforesaid, in the county of Morris aforesaid, and within the jurisdiction of this court, encroached upon, narrowed, and straitened so that the good people of this state, by and through the said highway, could not, nor yet come, go, return, pass, repass, ride, and labor, with their horses, coaches, carts, and carriages, as they ought and were wont and accustomed to do, without great damage and inconvenience, to the great damage and common nuisance of all the people of the state, going, returning, passing, repassing, riding, and laboring in and through

and along the common highway aforesaid, to the evil example of all others in like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

And the grand jurors aforesaid, upon their oaths and affirmation aforesaid, do further present, that the said the Morris and Essex Railroad Company afterwards, to wit, on the first day of September, in the year of our Lord one thousand eight hundred and forty-eight, and on diver others days, and times between that day and the day of the taking of this inquisition, with force and arms, at the township of Rockaway, in the county of Morris aforesaid, and within the jurisdiction of this court, in a certain common highway leading from the village of Rockaway to the village of Denville, used for all the good people of this state, with their horses, coaches, carts, and carriages, to go, return, pass, repass, ride, and labor at their free will and pleasure, unlawfully and injuriously did put and place, and cause to be put and placed, three cars, and did then, and on the said other days and times there, unlawfully and injuriously permit and suffer the said cars, respectively, to be and remain in and upon the common highway last aforesaid for a long space of time, to wit, for the space of twenty minutes and more, on divers times on each of said days, whereby the common highway aforesaid, then and on the said other days and times for and during all the times aforesaid on each of the said days, respectively, was obstructed and blocked up, so that the good people of the said state could not then, and on the said other days and times, go, return, pass, repass, ride, and labor, with their horses, coaches, carts, and other carriages, in, through, and along the common highway last aforesaid, as they ought, were wont and accustomed to do, to the great damage and common nuisance of all the good people of the said state, going, returning, passing, repassing, riding, and laboring, in, through, and along the common highway last aforesaid, to the evil example of all others in the like case offending, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same.

The cause was argued at February term, 1852, before the CHIEF JUSTICE and NEVIUS and OGDEN, Justices, by *White-head*, for the plaintiffs in error, and *Scofield*, for the state.

*Whitehead*, for plaintiffs in error.

The single question is, whether an incorporated company can be proceeded against by indictment for any offence which must be committed by active means, *i. e.* for any affirmative or positive act.

It may be indicted for neglecting to do an act required by law to be done for the public safety. But it cannot be indicted for any offence which must be charged to be done *vi et armis.* The remedy in such case is against the officers or agents of the company, and not against the corporation. *State* v. *Great Works M. and M. Co.,* 20 *Maine R.* 41 ; *Queen* v. *B. and G. Railway Co.,* 3 *Ad. & El. N. S.* 223 ; *Rex* v. *Medley,* 6 *Car. & P.* 292 ; *Queen* v. *B. and G. Railway Co.,* 9 *Car. & P.* 469 ; *Freeholders* v. *Strader,* 3 *Harr.* 108.

*Scofield*, for the state.

A corporation aggregate is liable to indictment for *misfeasance.* The point has recently been expressly adjudicated in a well considered case in the Court of Queen's Bench. *Regina* v. *The Great N. of E. Railway Co.,* 9 *Ad. & El. N. S.* 315.

It is well settled that a civil action lies against a corporation for a trespass or other *tort.* If it may be sued, it may be indicted. The objection has not been in principle to the remedy, but to the supposed inability of the corporation to commit the act. The objection has been, that the corporation has no power to authorize the commission of an illegal act. 4 *Man. & G.* 452 ; 2 *Law and Eq. R.* 406 ; 2 *Denio* 433 ; 2 *Hill* 629 ; 3 *Hill* 531 ; 3 *Peters* 409 ; 3 *Barb. Sup. Co. R.* 42 ; 5 *Ib.* 90 ; 3 *Comstock's R.* 464 ; 10 *Ohio* 159 ; 15 *Ohio* 479 ; 4 *Ohio* 500.

The indictment should be against the corporation, because they are the only proper persons to abate the nuisance. The judgment is, that the nuisance be abated.

If the defendants are not indictable for *erecting* the nuisance, they are for continuing it or neglecting to remove it, and on that ground the indictment may be sustained.

The CHIEF JUSTICE.  The indictment charges the defendants with the creation of a nuisance, by erecting a building upon the public highway, and continuing it there; and also by placing cars in the public highway, and suffering them to remain therein. The single question presented for the consideration of the court is, whether a corporation aggregate is liable to be proceeded against by indictment for any offence committed by active means or by an affirmative act, which must of necessity be charged to have been done *vi et armis.*

The law is well settled, that a corporation aggregate is liable to indictment.  It is said, indeed, by Blackstone, that a corporation cannot commit treason, felony, or *other crime*, in its corporate capacity, citing the case of *Sutton's Hospital*, 10 *Coke* 32.  The original authority is simply, that a corporation cannot commit treason.  While it is conceded that a corporation cannot, from its nature, be guilty of treason, felony, or other crime involving *malus animus* in its commission, it is believed that there is no authority, ancient or modern, which denies the liability of a corporation aggregate to indictment, except an anonymous case, said to have been decided by Chief Justice Holt, in the Court of King's Bench, in the 13 *Will.* 3 (1701.) The case is reported, in 12 *Mod.* 559, briefly as follows : "Note per Holt, Chief Justice.  A corporation is not indictable, but the particular members of it are."  It may well be doubted whether this is not one of those cases which extorted from Lord Holt the bitter complaint of his reporters, "that the stuff which they published would make posterity think ill of his understanding, and that of his brethren on the bench."  Aside from the apochryphal character of the report, it is hardly credible that so learned and accurate a judge as Lord Holt should have laid down the broad proposition imputed to him by his reporter.  It is certain that while he was chief justice of the King's Bench, there were cases before that court of indictments against *quasi* corporations for neglect to repair roads and bridges.

*Regina* v. *The County of Wilts*, 1 *Salk.* 359 ; *The Queen* v. *The Inhabitants of Cluworth*, 6 *Mod.* 163, *S. C.;* 1 *Salk.* 359, and in the *Queen* v. *Saintiff,* 6 *Mod.* 255, Lord Holt

himself held, that if a common footway be in decay, an indictment must of necessity lie for it, because an action will not lie without a special damage. It seems to be true, moreover, as was stated by Talfourd, Sergeant Arguendo, in the *Queen* v. *Railway Co.*, 3 *Queen's Bench* 227, that although there was at that time no direct authority in England for the position, that a corporation aggregate is indictable in the corporate name, yet the course of precedents has been uniform for centuries, and the doctrine has frequently been taken for granted, both in arguments and by the judges. The case of *Langforth Bridge Cro. Car.* 365 (1635); *Regina* v. *The Inhabitants of the County of Wilts*, 1 *Salk.* 359 (1705); *The King* v. *Inhabitants of the West Riding of Yorkshire*, 2 *Blac. Rep.* 685 (1770); *Rex* v. *The Inhabitants of Great Boughton*, 5 *Burr.* 2700 (1771); *The King* v. *The Inhabitants of Clifton*, 5 *D. & E.* 499 (1794); *Rex* v. *The Corporation of Liverpool*, 3 *East* 86 (1802); *Rex* v. *Mayor of Stratford upon Avon*, 14 *East* 348 (1811); *Rex* v. *The City of Gloucester, Dougherty's Crown Circ. Ass.* 259.

Notwithstanding the frequent instances to be found in the books of indictments against aggregate corporations for neglect of duty imposed by law, the liability of a corporation to indictment was not expressly adjudicated in Westminster Hall until the very recent case of *The Queen* v. *The Birmingham and Gloucester Railway Co.*, 9 *Car. & Payne* 469, 3 *Queen's Bench* 223. In that case, it was directly adjudged that a corporation aggregate may be indicted by their corporate name for disobedience to an order of justices requiring such corporation to execute works pursuant to a statute.

The same principle has been repeatedly recognized in the American courts, both before and since the decision in *The Queen* v. *The Birmingham and Gloucester Railway Company. Mower* v. *Leicester*, 9 *Mass.* 250 ; *Howard* v. *North Bridgewater*, 16 *Pick.* 190 ; *The Susquehanna and Bath Turnpike Co.* v. *The People*, 15 *Wend.* 267 ; *Freeholders* v. *Strader*, 3 *Harr*, 108.

In this state, there is an express legislative recognition of the liability of corporations to indictment. The act of Febru-

ary 10, 1837, (*Rev. Stat.* 999) provides a mode of compelling the appearance of corporations to indictments, and of enforcing sentence upon conviction. It is not understood that the counsel for the defence question or deny the liability of a corporation aggregate to indictment. The question discussed upon the argument was, not whether a corporation aggregate may be indicted, but for what offence it may be indicted, or what offence a corporation aggregate may in its corporate capacity commit.

It is insisted, that although a corporation is liable to indictment for neglect of duty or mere *nonfeasance*, it cannot be indicted for any offence requiring for its commission a direct and positive act. I am aware of but two cases in which this question has been directly presented for judicial decision. In the case of *The State* v. *The Great Works Milling and Man. Co.*, 20 *Maine Rep.* 41, the defendants were indicted for a nuisance in the erection of a dam across the Penobscot river. At June term, 1841, the Supreme Court of Maine decided that the indictment could not be sustained, on the ground that where a crime or misdemeanor is committed by any positive or affirmative act, under color of corporate authority, the individuals acting, and not the corporation, should be indicted.

In *The Queen* v. *The Great North of England Railway Co.*, 9 *Queen's Bench* 315, the defendants were indicted for cutting through and obstructing a highway, by works performed in a course not conformable to the powers conferred on the company by act of parliament. The indictment, after solemn argument and deliberate advisement, was sustained by the unanimous opinion of the Court of Queen's Bench, the court thus sustaining the principle, that a corporation aggregate may be indicted for a *misfeasance*.

These two authorities being directly in conflict, it may be necessary to consider the principle involved in the inquiry. It being conceded that an indictment will lie against a corporation aggregate for a *nonfeasance*, or for any cause whatever, all preliminary and formal objections arising out of the invisibility and intangibility of the body aggregate, the

impossibility of arresting it, its inability to appear, its incapacity for punishment, and the injustice of punishing innocent stockholders for the acts of others, are at once disposed of. These objections apply, it is obvious, with equal force to indictments for acts of *nonfeasance*. If they are invalid as to the one, they are equally so as to the other.

But it is said, that although a corporation may omit to perform acts made obligatory upon it by law, and thus be liable for *nonfeasance*, yet from its very nature it cannot use force, and therefore cannot commit any act involving force, and which must be charged to have been committed *vi et armis*. This argument rests entirely upon the disability of the corporation to commit any act of trespass or positive wrong, and applies to its capacity to commit *civil* as well as *criminal* injuries. It is the very argument by which it was sought to be established that no action for a trespass or *tort* would lie against a corporation. But it has been well said, that if a corporation has itself no hands with which to strike, it may employ the hands of others; and it is now perfectly well settled, contrary to the ancient authorities, that a corporation is liable *civiliter* for all *torts* committed by its servants or agents by authority of the corporation, express or implied. Thus it is liable in trover. *Tarborough* v. *The Bank of England*, 16 *East* 6; *Duncan* v. *The Surrey Canal*, 3 *Stark.* 50; *Foster* v. *The Essex Bank*, 17 *Mass.* 503; *Beach* v. *The Fulton Bank*, 7 *Cowen* 485. In case for indirect injuries resulting from tortious acts as well as from negligence—*Bridge* v. *The Grand Junction Railway Co.*, 3 *Mees. & W.* 244; *The Chesnut Hill Turnpike Co.* v. *Rutter*, 4 *Serg. & Rawle* 6; *Thayer* v. *Boston*, 19 *Pick.* 511; *Bailey* v. *The Mayor of New York*, 3 *Hill* 531; *S. C.* (in error), 2 *Denio* 433; *Baptist Church* v. *Schenectady and Troy Railroad*, 5 *Barbour's Supreme Court R.* 79; *Wilson* v. *The Rockland Manufacturing Co.*, 2 *Harring's R.* 67; In trespass *quare clausum fregit*—*Bloodgood* v. *The Mohawk and H. Railroad Co.*, 14 *Wend.* 51, *S. C.*, 18 *Wend.* 9; *Thatcher* v. *The Dartmouth Bridge Co.*, 18 *Pick.* 501; *The Seneca Railroad Co.* v. *The Auburn and R. Railroad Co.*, 5 *Hill* 170; *Van Wormer* v. *The Mayor of Alba-*

*ny*, 15 *Wend.* 262. In trespass *vi et armis* to personal property—*Maund* v. *Monmouthshire Canal Co.*, 4 *Man. & Gran.* 452; *Hay* v. *Cohoes Co.*, 3 *Barbour's Sup. Co. R.* 42; *Whiteman's Executors* v. *The Wil. and Susq. Railroad Co.*, 2 *Harring's R.* 514. And in ejectment—*Dater* v. *The Troy Railroad and Turnpike Co.*, 2 *Hill* 631.

So a corporation may be guilty of a *disseisin*. *Second Precinct* v. *Catholic Cong.*, 23 *Pick.* 140 ; *Proprietors of the Canal Bridge* v. *Gordon*, 1 *Pick.* 296 ; and even of an assault and false imprisonment. *Eastern Counties Railway Co.* v. *Brown*, 2 *Law and Eq.* 406.

These cases have all arisen within the present century, and are certainly in conflict with the ancient doctrine, as laid down by the venerable sages of the law, if not by the authority of the courts. *Liber Ass. fol.* 100, *pl.* 67 ; *Brooke's Ab.* " *Corporations*," 43, " *Trespass*," 239 ; *Com. Dig.* " *Corporations*," F. 19, " *Pleader* " 2 *B. ;* 2 *Impey's Prac.* 675 ; 2 *Sell. Pr.* 78 ; *Viner's Ab.* " *Corporations*," *P.* § 2, 2 § 15 ; 1 *Saund. P. & E.* 386 ; 1 *Bl. Com.* 476 ; 1 *Wooddeson's Lec.* 296 ; and 8 *East* 230, per Lawrence, J.

The earlier authorities, denying the liability of corporations *civiliter* for *torts*, are nearly all traceable to the *dictum* of Chief Justice Thorpe, in *Liber Ass.* 100, *pl.* 67, that " a writ of trespass lies not against a commonalty, for, he said, a man shall never have a *capias* or *exigent* against a commonalty." From this view of the law, it would seem that the difficulty in holding corporations liable *civiliter* for their tortious acts was originally supposed to consist not in the inability of the corporations to commit the wrong, but in the incapacity of the courts to administer the remedy.

The result of the modern cases is, that a corporation is liable *civiliter* for *torts* committed by its servants or agents precisely as a natural person ; and that it is liable as a natural person for the acts of its agents done by its authority, express or implied, though there be neither a written appointment under seal, nor a vote of the corporation constituting the agency or authorizing the act. The doctrine is founded on sound principle, and applies, so far at least as the present objection is con-

cerned, as well to the *criminal* as to the *civil* liability of the corporation.

It is further objected, that a corporation aggregate cannot be liable to indictment for any crime, because the commission of the criminal act is not warranted by their corporate powers. This argument, pushed to its legitimate conclusion, would exempt a corporation from all liability for wrongs, civil as well as criminal. It is most aptly answered by Mr. Binney, in his argument in *The Chestnut Hill Turnpike Co.* v. *Rutter* 6 *Binney* 12. "According to the doctrine contended for, if they do an act within the scope of their corporate powers it is legal, and they are not answerable for the consequences. If the act be not within the range of their corporate powers, they had no right by law to do it: it was not one of the objects for which they were incorporated, and therefore it is no act of the corporation at all. This doctrine leads to absolute impunity for every species of wrong, and can never be sanctioned by any court of justice."

But why should corporations be held liable for *nonfeasance*, and not for *misfeasance?* why for neglect of duty, and not for violation of law? The startling incongruity of allowing the exemption, is (as was said by Lord Denman, in *The Queen* v. *The Great North of England Railway Company,*) one strong argument against it.

It is said, again, that the individuals who concur in making the order or in doing the work are individually responsible. And so is every servant or agent by whose agency a *tort* is committed, but it has never been supposed that the principal is therefore exempt from liability. On the contrary, the principle and the policy of the law has ever been to look to the principal rather than to the mere agent; and in the case of corporations, it is the clear dictate of sound law not only, but of public policy, to look rather to the corporation at whose instance and for whose benefit the wrong is perpetrated, than to the individual directors by whose order the wrong was done, who may be entirely unknown, or to the laborers by whom the work was performed, who, in a great majority of cases, would be alike unknown and irresponsible.

It is true that there are crimes (perjury for example) of which a corporation cannot, in the nature of things, be guilty. There are other crimes, as treason and murder, for which the punishment imposed by law cannot be inflicted upon a corporation. Nor can they be liable for any crime of· which a corrupt intent or *malus animus* is an essential ingredient. But the creation of a mere nuisance involves no such element. It is totally immaterial whether the person erecting the nuisance does it ignorantly or by design, with a good intent or an evil intent; and there is no reason why for such an offence a corporation should not be indicted.

There is a strong reason, which does not seem to have been adverted to in the reported cases, why the corporation, and not the individual directors or laborers, should be indicted for the creation of a nuisance. The principal object of an indictment for a nuisance, is to compel it to be abated; and regularly a part of the judgment upon conviction is, that the nuisance be abated. 1 *Hawk. P. C.*, ch. 75, § 14; *Queen* v. *The Inhabitants of Chuworth*, 1 *Salk.* 358, *S. C.*; 6 *Mod.* 234; 1 *Chit. Crim. Law* 716; *The King* v. *Stead*, 8 *D. & E.* 142; *Commonwealth* v. *Wright*, Angell on *Tidewaters* 222.

A similar judgment was rendered in the case of *The State* v. *King*, in the Passaic Oyer and Terminer, which has since been affirmed in the Court of Errors and Appeals. If the rights of the corporation are to be concluded by the judgment, as in the present case, a valuable building, erected by the company at great cost for their own convenience, is to be ordered to be torn down as an encroachment upon the highway, there is peculiar propriety in making the corporation itself a party, and giving it an opportunity of being heard in defence. To condemn the property of the corporation to destruction upon an indictment against an irresponsible individual who was employed in the construction of the work, but who has no interest in the company, and who perhaps is hostile to its interests, savors strongly of the injustice of condemning them unheard. And it is not clear how the sentence is to be executed against the corporation, who are in possession, and in no sense parties to the proceeding.

The State v. The Morris and Essex Railroad Co.

I am of opinion that the judgment below should be affirmed.

NEVIUS, J. This is an indictment, found by the grand jury of the county of Morris, against the plaintiffs in error, who are an incorporated railroad company, upon which they were convicted before the Court of Oyer and Terminer and General Jail Delivery of that county.

The indictment contains two counts. The first charges them with erecting and maintaining a building upon a certain public highway, and thereby creating a nuisance and obstruction to the free use of said highway. The second charges them with obstructing said highway upon divers days, and for certain periods of time on each day, by permitting and suffering their train of cars to stand upon it, and thereby injuriously and unlawfully impeding and preventing the travel, &c., to the great damage and common nuisance, &c.

It is not denied in the argument, nor can it be, that an indictment will lie for the erection or continuance of a nuisance or unlawful obstruction, on a public highway. All common and public nuisances, which aggrieve, annoy or impair the common rights of the community, may be punished criminally by indictment. The offence charged in this indictment is of that character, a public and common nuisance, and undeniably an indictable offence, if committed by an individual. But it is here insisted, that an incorporated company, as such, cannot be indicted for any positive and affirmative act, which in its nature must be the act of an individual, and committed with force. The principle being admitted, that the person who erects a public nuisance may be indicted for it, let us inquire whether an artificial person, or an incorporated company, in their corporate capacity, can erect or maintain, and continue a public nuisance. For if they can, ex vi termini, they may be indicted. It requires no great ingenuity to show that a company, as such, may be guilty of a public nuisance. A canal company, acting within the scope of its chartered rights, constructs a canal across a public highway or road, but neglects to erect a bridge for the accommodation of the public travel; such canal becomes a nuisance, as well by the act, as by the neglect of the

·company. So if a railroad company erects an embankment across a public highway, which by law they may be authorized to do, or make a deep excavation across such road, without pro-viding the means for the public to pass over, such embankment or excavation becomes a nuisance, and the company criminally responsible for it. So in the case before us, the plaintiffs in error, having a right to erect buildings for the transaction of their business, by their own act, or the act of their agents under their direction, erect a building on a public highway, where by law they have no right to erect it, it becomes a public nuisance. And there would be little justice in proceeding against the agent or servant of the company, and subjecting him to fine and im-prisonment, for an act which he may have performed in good faith, and suffering his employers not only to escape punish-ment, but leaving them in the enjoyment of all the profits and advantages of their illegal erection.

But it was urged in the argument, that a corporation, as such, cannot commit crime; that it cannot be guilty of a battery or murder. Be it so; yet it will not follow that it may not be guilty of erecting a nuisance, or continuing one already erected, which it has become their legal duty to abate. So a single in-dividual cannot be indicted for a riot, yet if he associates him-self with others to commit one, all may be indicted.

In *Angell & A. on Corporations*, page 396, in answer to the remark, " That a corporation is not indictable, though its members may be," it is said, " that this only applies to crimes and misdemeanors, but that an indictment may lie against a corporation, or county, or parish."

Whatever may have been the received doctrine of the com-mon law in early times, when corporations were fewer than now, touching their criminal responsibility, very many modern cases are to be found in the books where they have been held liable to indictment. See *Man. & G.* 237 ; 9 *A. & E.* 314 ; 3 *Barb.* 42 ; 20 *Pick.* 140 ; 6 *J. R.* 90, and very many other cases. But if there were no precedent to be found, I think this indictment good upon every sound principle of law and justice. Let the judgment be affirmed.

OGDEN, J., concurred.

CITED in *New Brunswick Steamboat Co.* v. *Tiers,* 4 *Zab.* 700; *Brorokaw* v. *N. J. R. R. & Tr. Co.,* 3 *Vr.* 330 ; *Dock* v. *Elizabeth Steam Mfg. Co.,* 5 *Vr.* 316.