## WEISMER v. VILLAGE OF DOUGLAS.

## HALSEY v. VILLAGE OF DOUGLAS.

*Taxation — not allowable in aid of private purpose — manufacturing establishment, a private purpose. Municipal bonds — when void. Estoppel — what is not.*

No tax can be levied by a municipal corporation which is not for a public purpose, and the benefit which may come to a city or village from a successful manufacture is not a public purpose.

By Laws 1867, chap. 837, the village of D. was authorized, with the consent of a majority, etc., of the owners of taxable property, to issue village bonds in aid of a corporation located in said village and engaged in the manufacture of lumber, and provision was made for the payment of the principal and interest of such bonds by tax. *Held*, (1) that the legislature had no power to authorize the issue of such bonds; (2) that the consent of a majority of the owners of taxable property would not render such issue valid; and (3) that the bonds were void, even in the hands of an innocent holder for value.

The bonds were issued, and the taxable inhabitants of the village, on one occasion, voted a special tax to pay the interest. *Held*, that the voting of the tax did not estop the village from denying the validity of the bonds.

APPEALS by defendant from judgments in favor of plaintiffs entered upon the decision of the court.

The actions were brought, one by John L. Weismer and the other by Robert Halsey against the village of Douglas, to recover the

amount due on certain coupons attached to bonds issued by the defendant. They were tried at special term without a jury, and a decision was given for the plaintiff in each. The defendant appeals. The same questions arise in each action.

The Long Eddy Hydraulic & Manufacturing Company was a corporation, formed under the general laws of this State, for the purpose of " constructing and improving a water privilege, * * * and for the purpose of manufacturing lumber." In other words, it was a saw-mill company.

By the Laws of 1867, chap. 837, the company was authorized to build a dam across the Delaware. By chap. 577, Laws of 1868, the village of Douglas was authorized to take stock not to exceed $10,000 in this company. This was to be done by the usual system of commissioners and consents, which has been so notorious for the last few years. Three commissioners were to be appointed for the purpose of taking the stock. They were to issue scrip ; this scrip was to be denominated on its face : " *Internal improvement fund of the village of Douglas.*" The written consent of a majority of tax payers representing a majority of the taxable property was to be obtained. No subscription was to be made to the stock until at least $15,000 of the stock had been in good faith subscribed and forty per cent thereon paid in. The bonds were to be negotiated at not less than par, the proceeds invested in securities and the securities collected to meet the assessments on the stock of the company owned by the village ; taxes to pay the principal and interest due on the bonds were to be collected in the same manner as other village taxes.

On the 1st of June, 1868, and at the time of the issue of the bonds, Denis D. McKoon was president, Henry H. McKoon was treasurer and Francis G. Barnes was clerk of the village of Douglas. A meeting of the village trustees was held on that day, at which were present Denis D. McKoon, N. S. Tyler, C. G. Armstrong and one Peak. McKoon was then treasurer, and Peak and Tyler stockholders in the Long Eddy Hydraulic & Manufacturing Company. On that day these trustees of the village appointed Denis D. McKoon, and Samuel Miller and George Potts, two other stockholders of the Long Eddy Hydraulic & Manufacturing Company, " commissioners for internal improvement fund."

Prior to this time, however, and to the issue of the bonds as hereinafter stated, $15,000 of the stock of the company had not

been in good faith subscribed for, nor had forty per cent thereon been paid in. But the stockholders had had a meeting in the spring, and Potts had agreed to assume $300, one Parmenter $500, and McKoon $1,000, so as to have it appear that all the stock was taken. Potts' extra stock was paid for in work. Miller gave a note for the first fifteen per cent, and McKoon declined to pay his, on account of the understanding that he was not to pay. Peak paid for his stock by building a boarding-house for the company.

Under the provisions of the act, consents to issue said bonds were obtained, proved and acknowledged and certified by the village clerk. These represented a majority of the taxable property, provided the signature of the president of the Erie Railway Company was a sufficient signing to represent the company, without a resolution of the board of directors. There was no evidence that it was authorized by any resolution of the board.

Said Denis D. McKoon as president, said Henry H. McKoon as treasurer, Francis G. Barnes as clerk, and said Denis D. McKoon, Samuel Miller and George Potts, as commissioners, signed bonds to the amount of $10,000, denominated on the face, "Internal Improvement Fund of the Village of Douglas." These bonds recited a statute passed April 30th. The statute was in fact passed May 5th. They are payable to Denis D. McKoon, treasurer, or bearer. They were delivered to Denis D. McKoon.

On the 1st of July, 1868, a certificate of stock in the Long Eddy Hydraulic & Manufacturing Company for one hundred shares signed by Denis D. McKoon treasurer, and Cyrus Peak president, was issued to the village. It stated that fifteen per cent had been paid. A second installment of same date of twenty-five per cent, a third of thirty-five per cent, August 27, and a fourth of twenty-five per cent, October 1, are indorsed, all signed by Denis D. McKoon, treasurer. These bonds of the village were not sold, but were turned over to the company for the stock.

The plaintiffs in December, 1868, or January, 1869, and in a month or two after that, bought some of these bonds. They got them of Denis D. McKoon, and paid him for them. The plaintiffs now sue on the unpaid coupons of these bonds.

The trustees of the village of Douglas since the issue of this stock voted thereon. And the taxable inhabitants of the village once voted to raise by special tax the interest, $525, to become due on the bonds, and the same was raised and paid accordingly.

*H. & W. J. Welsh*, for appellant.

*Youmans & Niles*, for respondents. The act in question is constitutional and valid. *People* v. *Mayor of Brooklyn*, 4 N. Y. 419; *Town of Guilford* v. *Supervisors of Chenango*, 13 id. 143 ; *Olcott* v. *Supervisors, etc.*, 16 Wall. 678 ; *Darlington* v. *Mayor of New York*, 31 N. Y. 189 ; *Davidson* v. *Mayor of New York*, 27 How. 342 ; *People* v. *Mitchell*, 45 Barb. 208 ; S. C., 35 N. Y. 551 ; *Bank of Rome* v. *Village of Rome*, 18 id. 38 ; *Thomas* v. *Leland*, 24 Wend. 65 ; 2 Dill. Mun. Corp. 686, and cases cited ; *Hanson* v. *Vernon*, 27 Iowa, 28 ; S. C., 1 Am. 215 ; *People* v. *McCreery*, 34 Cal. 432; *Hilbish* v. *Catherman*, 64 Penn. St. 154; *Hasbrouck* v. *Milwaukee*, 13 Wis. 37 ; *Matter of Townsend*, 39 N. Y. 182 ; *Brewster* v. *Syracuse*, 19 id. 118 ; *Clark* v. *Rochester*, 24 Barb. 489 ; *People* v. *Morrell*, 21 Wend. 576 ; *Butler* v. *Palmer*, 1 Hill, 330 ; *Leggett* v. *Hunter*, 19 N. Y. 463 ; *People* v. *Lawrence*, 41 id. 141 ; *Howell* v. *Buffalo*, 37 id. 270 ; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 45 ; *Bloomfield, etc., Gas L. Co.* v. *Richardson*, 63 Barb. 437 ; *Hartwell* v. *Armstrong*, 19 id. 169 ; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9; S. C., 14 id. 51; *Buffalo, etc., R. R. Co.* v. *Brainard*, 9 N. Y. 109 ; *People* v. *Nearing*, 27 id. 306. The improvement of a mill-site is a public use. *Boston, etc., Co.* v. *Newman*, 12 Pick. 467 ; *Commonwealth* v. *Essex Co.*, 13 Gray, 249; *Olmstead* v. *Camp*, 33 Conn. 532 ; *Bradley* v. *N. Y. & N. H. R. R. Co.*, 21 id. 305; *Nicholson* v. *N. Y. & N. H. R. R. Co.*, 22 id. 86 ; *Newcomb* v. *Smith*, 1 Chand. 71 ; *Pratt* v. *Brown*, 3 Wis. ,603 ; *Fisher* v. *Horicon, etc., Co.*, 10 id. 351 ; *Crenshaw* v. *Slate River Co.*, 6 Rand. 245 ; *Harding* v. *Goodlett*, 3 Yerg. 41. By proceeding under the statute, and accepting its benefits, defendant waived the right to question its constitutionality. *Houston* v. *Wheeler*, 52 N. Y. 641; *Sherman* v. *McKeon*, 38 id. 266 ; *Embury* v. *Conner*, 3 id 511 ; *Baker* v. *Braman*, 6 Hill, 47 ; *Vose* v. *Cockroft*, 44 N. Y. 415 ; *Van Hook* v. *Whitlock*, 26 Wend. 43 ; *People* v. *Havemeyer*, 4 N. Y. Sup. 365. The bonds, and the act indicating that they were intended for a public purpose, defendant cannot set up against a *bona fide* holder for value that they were used for a private one. *F. & M. Bank* v. *B. & D. Bank*, 16 N. Y. 125 ; *Stoney* v. *Am. L. Ins. Co.*, 11 Paige, 635 ; *Supervisors, etc.*, v. *Schenck*, 5 Wall. 784 ; *Morford* v. *Farmers' Bank*, 26 Barb. 568 ; *State of Indiana* v. *Woram*, 6 Hill, 33 ; *Moss* v. *Rossie Lead Mining Co.*, 5 id. 137.

Present — LEARNED, P. J., BOARDMAN and JAMES, JJ.

LEARNED, P. J. The act incorporating the village of Douglas (Laws of 1867, chap. 449) authorizes it to sue and to be sued. Probably this relieves the cases from the question whether an action is the proper remedy for the plaintiffs. *Brady* v. *Supervisors of N. Y.*, 10 N. Y. 260 ; *Martin* v. *Supervisors of Greene*, 29 id. 645; *Bell* v. *Town of Esopus*, 49 Barb. 506. Without passing on that question we come to the merits.

It should be noticed in the outset that the forming of a corporation does not make the purposes of the corporation a public one. Therefore, the purposes of the Long Eddy Hydraulic & Manufacturing Company are no more public than those of a single individual would be, if he were engaged in the same business.

We are to treat this case just as if it were not a corporation, but a few partners who were to engage in the business of improving a water privilege and manufacturing lumber, and the village of Douglas were to be one of the partners.

What, then, was the business of the company ? The certificate distinctly states that it is the constructing and improving a water privilege and the manufacturing of lumber, etc., thereon. Some facts were found by the court below which should be noticed. It was found that the construction of the dam would have caused slackwater, which would be of advantage to lumbermen by enabling them to construct piers ; that lumber, logs and timber are the principal products of the surrounding country ; that the material growth and prosperity of the village would have been increased by the accomplishment of the objects of the company; that the public might have been benefited by the clearing out of the channel of the river ; that by the use of proper appliances the water could have been conducted through the village from the dam.

So far as I can see, there is no evidence on these points in the case. Presumptively, it would seem that the forcing of water, by some proper appliances, up ten feet, into the village, would not aid the water privilege or the manufacture of lumber.

But, at any rate, these purposes are problematical, and are not connected with the objects of the company. When a company shall be formed for the purposes of docking the river, of clearing its channel, or of conveying water into the village, it will be time

to decide whether such purposes are of a public character. We have now to do only with a company incorporated to improve a water privilege and to manufacture lumber, etc. Useful purposes; but are they public?

In some States the legislature may authorize the taking of land for mill sites *in invitum*. Statutes giving such power, and called flowage acts, are recognized as valid in Massachusetts, Connecticut, and in some other States. They have not been so recognized in this State that I am aware of; and the expression of opinion on the subject has been unfavorable. *Hay* v. *Cohoes Co.*, 3 Barb. 42; Cooley on Const. Law, 534.

The taking of land *in invitum* has been principally done by railroads, etc. Its ground is necessity; and that is its limit. *Matter of N. Y. & C. R. R. Co.* v. *Gunnison*, 3 N. Y. Sup. 632; *R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137.

But the question here is not on the right of taking land *in invitum*; although it may have some analogy with that subject. *People* v. *Brooklyn*, 4 N. Y. 419. And the numerous cases showing that on making compensation, land may be takn for railroads, water works and the like, have not much to do with this case. The question here is, whether a municipal corporation can tax the persons and property under its government, in order to turn over the money so raised to individuals for the purpose of building a saw mill.

And another point which should be noticed is that this question is not affected by the fact (assuming it is to be a fact), that a majority of the tax-payers consented. In private corporations within the scope of the corporate powers, the majority properly govern. But the village is not organized for manufacturing purposes. The majority have no necessary right, therefore, to compel the minority to enter into speculations of this kind. A village is a subordinate branch of the civil government. The legislature may give the management of its municipal affairs to the majority, or to such other authority as may be constitutionally designated. What right has any village authority, whether supported by the majority of taxpayers or not, to take by tax the private property of their citizens in order to give it to others? The mere fact that parties live within the same corporate limits does not authorize the majority to make bargains for the minority in matters not pertaining to the corporate body. *Taylor* v. *Porter*, 4 Hill, 143. While again, if

such a power can be derived from an act of the legislature, then it would follow that no consent of a majority of tax payers would be needed in case the legislature chose to dispense with it.

The legislature, without the consent of the majority of tax payers, could authorize the municipal authorities to levy taxes for such purposes as these, if they could give such authority with the consent of such majority. Courts have already seen the evil of such a doctrine. And they have held that a corporation cannot be compelled to embark in private business — not even in a railroad. *People* v. *Batchelor*, 53 N. Y. 128.

Without regard, therefore, to the fact that few of the tax payers, or many, consented to the issue of these bonds, we return to the question whether the legislature has any power to authorize a municipal corporation to raise by tax money for the purpose of paying it to private individuals to use in their manufacturing enterprises. The right to tax is necessarily involved in the right to issue bonds, because it is by taxation only that the bonds must be paid. There is no other resource for payment.

It is too late now to dispute that acts similar to the present are constitutional, when the enterprise is the construction of a railroad. This is upon the ground that the railroad is a public highway. *Olcott* v. *Supervisors*, 16 Wall. 678, 696; *Clark* v. *Rochester*, 24 Barb. 446; *Bank of Rome* v. *Village of Rome*, 18 N. Y. 38. As it is the duty of a municipality to take care of the roads and highways within its limits, it was held that "a railroad terminating at a village or city was not so foreign to its public interests" that the municipality might not subscribe to the stock. And from that position the doctrine has finally gone to the extent of allowing a county to give aid to a railroad out of the State. *Railroad Co.* v. *County of Otoe*, 16 Wall. 667.

But even as to railroads it seems to be thought that the doctrine has been carried too far. For while a railroad constructed by a private corporation is a public highway (*Bank of Rome* v. *Village of Rome, supra*), and while the legislature may compel a town, without the consent of its citizens, to issue bonds for the construction of highways (*People* v. *Flagg*, 46 N. Y. 401), with happy inconsistency the courts of this State have recently held that the legislature cannot compel a town to issue bonds to aid in the construction of a railroad by a company. *People* v. *Batchelor*, 53 N. Y. 128. In the

language of that decision, a railroad is "a work public in some respects, but private in others."

Now, decisions which have sustained the so-called "bonding statutes" have always recognized the fact that *railroad companies* are private corporations. But they have sustained these statutes on the ground that the purposes or objects of the companies were public improvements; "that the *railroad* had not lost this character because constructed by individual enterprise."

Since, therefore, the case last cited holds that the railroad, that is, *the thing constructed,* is "a work public in some respects but private in others," we may safely understand that this case shows at least a modification of former decisions.

So, too, in the case of *Citizens Loan Asso.* v. *Topeka,* 20 Wall. 655, it is remarked that few courts have decided in favor of these so-called "bonding statutes," without a division among the judges, and others have decided against them altogether; and the court adds, "of the disastrous consequences which have followed its recognition (the constitutionality of such statutes) by the courts, and which were predicted when it was first established, there can be no doubt." The tone of that decision indicates a doubt of the soundness of the principle which has been decided, even as to railroads. But when we get beyond the influence of these powerful corporations and inquire whether a legislature can authorize a city or town to levy a tax for the support of a manufacturing establishment, there can be no doubt on principle or from the decisions. No tax can be levied by a city which is not for a public purpose; and the probable benefit which may come to a city or village from a successful manufacture is not a public purpose. If a tax may be levied by a city to aid a manufacturer, it would follow that a tax might be levied to aid a merchant; or, in other words, a city, under the form of taxation, might take away the property of some of its citizens to enrich others. This would be confiscation rather than legislation. It is contrary to sound constitutional law, unless, perhaps, in the case of a protective tariff.

A State cannot order a city to raise money by taxation to establish one of its citizens in business. Cooley on Const. Lim. 494. The legislature cannot, in the form of a tax, take the money of a citizen and give it to an individual. *Brodhead* v. *City of Milwaukee,* 19 Wis. 658.

A municipal bond, issued under legislative authority to secure

the location, or aid in the erection of a manufacture, is void in the hands of a *bona fide* holder. *Commercial Bank* v. *City of Iola,* 2 Dillon, 358.

The legislature of Maine authorized the town of Jay to loan its credit to persons who were about to put up a steam saw-mill. There was to be a run of stones for grist, so that it might have been urged that one object was the grinding of grain, and that this was a public purpose. The town voted to loan $10,000 on this consideration. On the suit of some of the inhabitants it was held that this was not a public purpose, and that the legislature could grant no such power. *Allen* v. *Inhabitants of Jay,* 60 Me. 124.

So even where, under the authority of the legislature, a town voted to exempt manufacturing establishments from taxation for ten years, it was held that this was indirectly taxing others to give the money to the manufacturers, and that it could not be done. *Brewer Brick Co.* v. *Brewer,* 13 Am. Law Reg. (N. S.) 735. See, also, the same principle in *Weeks* v. *City of Milwaukee,* 10 Wis. 242.

The legislature of Massachusetts passed a law authorizing the city of Boston to raise money, by the issue of bonds, for the purpose of lending it to owners whose buildings had been destroyed by the great fire. In the case of *Lowell* v. *City of Boston* this law was declared to be unconstitutional. It authorized taxation merely for the benefit of private individuals. Yet, in that instance, it might have been said, with great force, in the language of the decision in the present case, "the material growth and prosperity of the village (city) would have been largely increased by the accomplishment of the objects of said company (owners), as it would have added a large tax-paying element thereto, and increased the value of the adjacent property."

This question has been carefully examined in the case of *Citizens' Loan Ass.* v. *Topeka,* 20 Wall. 655. The city of Topeka had been authorized by the legislature to issue bonds to aid a bridge manufacturing and iron works company. The only defense considered was, whether such a statute was constitutional. No question was made as to the regularity of the issue, and the plaintiff was a purchaser for value. The city had raised by taxation and paid the coupons first due. This action was on other coupons. The court held that the bonds were void; that a statute which authorized a town to issue bonds in aid of the manufacturing enterprise of individuals is void, because the taxes necessary to pay the bonds would,

if collected, be a transfer of the property of individuals to aid in the gain of others, and not for a public use.

That case, decided by a court which has manifested no reluctance to sustain the rights of holders of municipal bonds, seems to be sound and decisive.

Some remarks of the court are applicable also on the point which is urged upon us, that the village of Douglass has once paid interest on these bonds, and has voted on the stock. "Such a payment works no estoppel." The legislature had no authority to authorize the village to take this stock or to issue these bonds. All the acts were void; and nothing which has been done can authorize a future levy of taxes for this purpose.

Such is the course of decisions on this question. Others still might be cited. They show that the holding of bonds issued by municipalities to aid railroad companies to be valid, was an exception to the general rule; an exception unfortunate if not unsound; that it rested on the ground that the work was public, and that later decisions hold that such work is public only "in some respects." And they further show, that with this exception courts have refused to sustain laws which authorize municipalities to tax their citizens for the benefit of private enterprise.

The judgments should be reversed, and judgment ordered for defendant in each case.

*Judgments reversed.*