**Paul GAYNOR, Plaintiff,**

v.

**Louis MARTIN, and Commission on Human Rights & Opportunities, Defendants.**

**No. 3:99CV115(GLG).**

United States District Court, D. Connecticut.

Nov. 29, 1999.

Gerald M. Gaynor, Monroe, CT, for Paul A. Gaynor.

David Michael Teed, Attorney General's Office, Special Litigation, Hartford, CT, for Louis Martin.

## MEMORANDUM DECISION

GOETTEL, District Judge.

Defendant, the Connecticut Commission on Human Rights & Opportunities, has moved to dismiss this action on five grounds:

(1) The complaint fails to state a claim upon which relief can be granted, and, therefore, this case must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6);

(2) This complaint is barred, at least in part, by the Eleventh Amendment, and, therefore, this case must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6);

(3) This complaint was never served on the defendant Louis Martin, and, therefore, this case must be dismissed as to him pursuant to Fed.R.Civ.P. 12(b)(5);

(4) The plaintiff failed to exhaust his administrative remedies, and, therefore, this case must be dismissed pursuant to Fed.R.Civ.P. 12(b)(1), 12(b)(2), and 12(b)(6); and

(5) The plaintiff failed to prosecute this matter, and, therefore, this case must be dismissed pursuant to Fed.R.Civ.P. 41(b).

## BACKGROUND

Since 1989, plaintiff has been employed as an investigator by the Connecticut Commission on Human Rights and Opportunities ("the Commission"). His complaint, which contains 93 paragraphs and seventeen pages, is a litany of his dissatisfaction with his employment. (His complaint is in complete disregard of Rule 8(a), Fed.R.Civ.P., which requires "a short and plain statement" of the claims). In general plaintiff claims that, as a white male, he was subjected to different terms and treatment by his employer than "[d]efendants' favored employees," (Compl.¶ 26), which treatment was "motivated solely by the [p]laintiff's race, color and sex and for having complained of the [d]efendants' discriminatory conduct and practices." (Compl.¶ 1). Central to his complaint is his claim that, when he requested a voluntary reduction in his work schedule to three-and-one-half days per week, the Commission was slow to act upon this request, although his request was ultimately granted. (Plaintiff maintains that the delay was an act of deliberate retaliation and that the Commission had granted similar requests of female minority employees). Spread throughout his lengthy complaint are additional, generalized allegations that the Commission systematically harassed the white male managerial staff and favored female minority employees.

Plaintiff's complaint contains seven claims for relief for defendants' alleged violation of his rights under the First and Fourteenth Amendments to the Constitution of the United States; for violation of Title VII (based upon defendants' alleged discrimination against him on the basis of his race, color, and gender, unlawful retaliation, and hostile work environment); and under state law for breach of the covenant of good faith and fair dealing and for intentional infliction of emotional distress. Plaintiff seeks a judgment for compensatory damages, including lost wages and other sums of money (although the complaint does not specify how the plaintiff suffered these financial damages), as well as for liquidated damages and prejudgment interest.

## DISCUSSION

### I. Failure to State a Claim

Plaintiff's complaint states that it is brought under virtually every conceivable federal civil rights law, including Title VII, the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), 42 U.S.C. §§ 1981, 1981a, 1983, the Fourteenth Amendment, 28 U.S.C. §§ 1331 and 1343(a), as well as the "common law," and "state law" through 28 U.S.C. § 1367(a). (Compl.¶ 2). Indeed, plaintiff argues in opposition to defendant's motion to dismiss that "[t]his action alleges violations of virtually every conceivable civil rights law," which he attributes "not due to the overreaching of the [p]laintiff but due to the venality of the [d]efendants." (Pl.'s Mem. in Support of Obj. to Mot. to Dismiss at 2).

The events detailed in the complaint occurred primarily during the year 1998. At that time, the Commission was a troubled agency with its then Executive Director, Louis Martin, the subject of much criticism. In 1998, Martin left the Commission and was replaced by an Acting Executive Director, J. Elijah Brown. The papers filed with this motion indicate that there have been a number of civil complaints filed involving Martin's actions while Executive Director of the Commission. The general lack of specificity throughout the complaint suggests that plaintiff recognizes that in Martin he has a target defendant, and that plaintiff is grasping for a cause of action to assert. Whether plaintiff has successfully found a viable cause of action is the issue we must address in ruling on defendant's Rule 12(b)(6) motion to dismiss.

In ruling on a motion to dismiss, we accept all allegations of the complaint as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). "[I]t may appear on the face of the pleadings that a recovery may be very remote and unlikely but that is not the test." *Id.* When considering a motion to dismiss for failure to state a claim upon which relief may be granted, a district court should not dismiss a complaint unless it appears beyond doubt that the plaintiff can prove no set of facts consistent with the pleadings which would entitle him to relief. *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Williams v. Vincent,* 508 F.2d 541, 543 (2d Cir.1974).

### A. Plaintiff's Claims under the ADA and ADEA

 Although plaintiff states in paragraph 2 of his complaint that he is bringing this action under the ADEA and the ADA, neither statute is mentioned elsewhere in his complaint or in his seven "Claims for Relief," and nowhere does plaintiff allege that he falls within the protections of either statute—*i.e.,* that he is over the age of 40 or that he is an otherwise qualified individual with a disability. He does make a single reference to "younger" female staff members receiving more favorable treatment than he received (Compl.¶ 24). That statement, without more, does not state a claim under the ADEA. He also makes several references

to not receiving "equal accommodation," (Compl.¶ 79c), but nowhere mentions with respect to what disability, if any,[1] he was seeking an accommodation. Otherwise, plaintiff never refers to "age" or "disability" in his complaint. Thus, we hold that plaintiff has failed to state a claim under either the ADEA or the ADA and dismiss those claims.

## B. Plaintiff's Claims under Title VII

Construing the complaint most liberally in plaintiff's favor, as we are required to do, *see Annis v. County of Westchester*, 36 F.3d 251, 253 (2d Cir.1994), it appears that plaintiff is attempting to set forth three separate Title VII claims against defendants: disparate treatment in the terms and conditions of his employment; harassment and hostile work environment; and retaliation. Defendant contends that plaintiff's allegations address only trivial employment actions that are not sufficient to form the basis of a discrimination lawsuit.

### 1. Disparate Treatment in Terms & Conditions of Employment

■ Title VII makes it unlawful for an employer, *inter alia,* "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Its protections are not limited to hirings, firings, or promotions. Plaintiff alleges that the Commission and defendant Martin repeatedly subjected him to differential terms and treatment motivated solely by plaintiff's race, color and sex. (Compl.¶ 1). He alleges that he was treated differently than female employees with respect to defendant's denial of his request for a voluntary schedule reduction, whereas similar requests had repeatedly and routinely been granted to younger, female employees. (Compl.¶ 24). He al-

leges that, thereafter, he was required to assume an inequitable work allocation due to the favoritism shown to defendants' "favored employees." (Compl.¶ 26). He claims that he received intentional and fallacious written warnings and critical evaluations as part of the Commission's agency-wide policy of discrimination and retaliation against white, male employees, fostered by defendant Martin. (Compl.¶¶ 28, 35). Plaintiff further alleges that he was not considered for a promotional position despite his superior qualifications to those of the black female who was selected. (Compl.¶ 65). Plaintiff has sufficiently alleged that he was subjected to discrimination in the terms and conditions of his employment to survive a motion to dismiss.

### 2. Hostile Work Environment

■ We agree with defendant, however, that plaintiff has not sufficiently alleged a viable claim under Title VII for hostile work environment. To state a claim for hostile work environment, a plaintiff must allege that the workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Gallagher v. Delaney,* 139 F.3d 338, 347 (2d Cir.1998); *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997); *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1305 (2d Cir. 1995). Under *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998), a plaintiff must allege "that the conduct at issue was not merely tinged with offensive sexual [or racial] connotations, but actually constituted discrimination . . . because of . . . sex [or race]." (Internal citations and

---

1. Indeed, his statements about not receiving an equal accommodation fall within the sec-

tion of his complaint concerning a violation of Title VII, not the ADA.

quotations omitted). The hostile environment must be both subjectively and objectively offensive: one that a reasonable person would find hostile or abusive, and that the victim did, in fact, perceive to be so. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. The Supreme Court in *Harris* instructed that a court should look to all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Id.* at 23, 114 S.Ct. 367. In *Schwapp,* 118 F.3d at 111, the Second Circuit held that incidents occurring outside the plaintiff's presence may be relevant to the totality of the circumstances. However, the incidents "must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton,* 524 U.S. 775, ——, 118 S.Ct. 2275, 2283 n. 1, 141 L.Ed.2d 662 (1998).

In this case, plaintiff has alleged in very conclusory fashion that his work environment was "hostile," (Compl.¶ 16); that he was "harassed," (*Id.*); that the Commission "fostered an environment racially hostile to [p]laintiff and others similarly situated," (Compl.¶ 29); that defendants have "systematically harassed the white male managerial staff and publicly touted its successful intent to replace them with minority female employees," (Compl.¶ 30); that Martin has repeatedly asserted in public positions that anyone who questioned his vision for the agency and the State of Connecticut was a "racist," (Compl.¶ 33); that Martin was well noted for his pejorative tirades about "Rich White Folk," (Compl.¶ 34); and that defendants have created "intolerable working conditions for the [p]laintiff and others similarly situated." (Compl.¶ 82). While plaintiff may well have an actionable hostile environment claim, as his complaint now stands, he has not alleged that he was subjected to such pervasive harassment based upon his race or gender as to alter the conditions of his employment and to create an abusive work environment. Indeed, for the most part, his allegations are so baldly conclusory that they fail to provide defendants with notice of the specific events and circumstances which plaintiff maintains constituted a hostile work environment. To survive a motion to dismiss, a complaint alleging harassment or hostile work environment must contain more that conclusory statements, and the allegations must put the defendant on notice of the claims it must answer. *Gibson v. Jacob K. Javits Convention Ctr.,* No. 95 Civ. 9728(LAP), 1998 WL 132796, at *8 (S.D.N.Y. Mar.23, 1998). The few specific facts that he has alleged are insufficient as a matter of law to state a claim for hostile work environment under Title VII. *See McNight v. Dormitory Auth. of New York,* 995 F.Supp. 70, 76 (N.D.N.Y.1998). Accordingly, we dismiss plaintiff's hostile work environment claim but grant plaintiff leave to replead this claim in accordance with this decision.

### 3. Retaliation

Last, plaintiff alleges that defendants violated Title VII, 42 U.S.C. § 2000e–3, by retaliating against him for complaining of their discriminatory practices and for filing a charge of discrimination with the Commission. His retaliation claims are somewhat intertwined with his disparate treatment claims. He alleges that he suffered retaliation with respect to the slow processing of his charge of discrimination, his receiving false and incorrect evaluations and performance appraisals, and in defendants' denying him an opportunity for advancement.

Title VII provides that it is an "unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). In order to establish a prima facie case of retaliation, plaintiff must

show (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action subsequent thereto; and (3) that a causal connection exists between his participation in the protected activity and the adverse employment action. *Gallagher,* 139 F.3d at 349.

■ In this case, plaintiff's filing a charge of discrimination with the Commission constituted participation in protected activity. *See Torres v. Pisano,* 116 F.3d 625, 639 (2d Cir.), *cert. denied,* 522 U.S. 997, 118 S.Ct. 563, 139 L.Ed.2d 404 (1997). Defendants assert, however, that plaintiff's retaliation claim must fail because he has not alleged that he suffered an adverse employment action as a result of filing this charge. As the Seventh Circuit stated in *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (1996), "[w]hile adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." In *Smart,* the court held that negative performance evaluations without more did not constitute an adverse employment action. *See also Richardson v. New York State Dept. of Correctional Service,* 180 F.3d 426, 443 (2d Cir.1999) (holding that the conclusory allegation that plaintiff deserved an excellent rather than an average performance rating was insufficient to establish that the evaluations constituted adverse or disadvantageous actions by her employer). And, in *Torres v. Pisano,* the Second Circuit found that defendants' demands that a plaintiff withdraw her EEOC charge were not sufficient to show that the plaintiff suffered "a materially adverse change in the terms and conditions of employment." 116 F.3d at 640 (internal citations omitted).

■ We hold that defendants' alleged slow processing of plaintiff's discrimination charge does not constitute a materially adverse change in the terms and

conditions of plaintiff's employment, nor would the allegedly false performance evaluations meet this requirement of a materially adverse employment action. It is possible that the denial of a promotion could meet this requirement, *see Kenworthy v. Conoco, Inc.,* 979 F.2d 1462, 1471 (10th Cir.1992), but plaintiff has neither sufficiently defined what "opportunities for advancement" were denied to him, nor has he alleged facts from which a reasonable jury could find that a retaliatory motive played a part in any adverse employment action taken against him.[2] *See Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir.1993). Thus, plaintiff has failed to state a cause of action for retaliation, and the Court dismisses this claim, again without prejudice to plaintiff's filing an amended complaint consistent with this opinion.

## C. Plaintiff's Claims Under 42 U.S.C. §§ 1981, 1981a, and 1983

Plaintiff has also asserted claims under the federal civil rights statutes for violation of his rights to "equal protection of the laws, secured by the Fourteenth Amendment to the Constitution of the United States as well as by the First Amendment to the Constitution to the United States." (Compl.¶ 75).

### 1. 42 U.S.C. § 1981a

■ Initially, we dismiss plaintiff's claims under section 1981a, to the extent that plaintiff is attempting to assert a separate cause of action under this statute. Section 1981a does not create an independent cause of action. Rather, it is a remedies provision enacted as part of the 1991 Civil Rights Act, that, *inter alia,* creates additional remedies for Title VII violations. *See Varner v. Illinois State Univ.,* 150 F.3d 706, 718 (7th Cir.1998), *pet. for cert. filed,* 67 U.S.L.W. 3469 (Jan. 11, 1999) (No. 98–1117).

2. Plaintiff alleges in his Third Claim for Relief that the defendants violated 42 U.S.C. § 2000e–3 "[i]n that the [d]efendants discriminated against the [p]laintiff in his opportuni-

ties for advancement because he opposed a practice made an unlawful employment practice." (Compl.¶ 79b).

## 2. 42 U.S.C. § 1981

As to plaintiff's claims under section 1981, we briefly consider whether plaintiff has stated a claim upon which relief may be granted, although, as discussed below, this claim must be dismissed on sovereign immunity grounds. Following the passage of the 1991 Civil Rights Act, (which broadened section 1981 to include the performance of contracts in the phrase "make and enforce contracts"), acts of intentional racial discrimination that occur during the employment process may violate section 1981. *See Hicks v. IBM,* 44 F.Supp.2d 593, 596 (S.D.N.Y.1999). Thus, plaintiff's claims of intentional race discrimination occurring during his employment, if properly pled, could state a cause of action. We decline to dismiss plaintiff's section 1981 claims on that basis.

## 3. 42 U.S.C. § 1983

As to plaintiff's section 1983 claims, intentional discrimination on the basis of race or sex by a government employer may be covered by section 1983 as an Equal Protection violation. *See Quinn v. Nassau County Police Dept.,* 53 F.Supp.2d 347, 356 (E.D.N.Y.1999). To the extent there is an identity between plaintiff's section 1983 claim and his Title VII claim, the section 1983 claim would be foreclosed. *See Saulpaugh v. Monroe Community Hosp.,* 4 F.3d 134, 143 (2d Cir.1993), *cert. denied,* 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). If, however, plaintiff is basing his claim on a substantive right distinct from Title VII, his claim would not be precluded. *Id.* It is unclear from the vague, conclusory allegations in plaintiff's complaint whether he is alleging anything other than what he has already attempted to allege under Title VII. However, because his section 1983 claim must be dismissed for other reasons discussed below, we need not decide this issue.

 Plaintiff also asserts a claim under section 1983 for violation of his First Amendment rights, although he does not state what First Amendment rights were violated, or how they were violated. Presumably, he is complaining about what he considers to be a violation of his First Amendment right to petition the government for redress, when the defendants, acting under color of state law, allegedly retaliated against him for filing his discrimination complaint. (Plaintiff does not identify a violation of his right of free speech). The "right to petition the government for redress of grievances, which is an assurance of a particular freedom of expression, ... is subject to the same constitutional analysis as the right to free speech." *White Plains Towing Corp. v. Patterson,* 991 F.2d 1049, 1059 (2d Cir.), *cert. denied,* 510 U.S. 865, 114 S.Ct. 185, 126 L.Ed.2d 144 (1993) (internal citations and quotations omitted). The Second Circuit has recognized that there are circumstances when complaints of system-wide employment discrimination may implicate matters of public concern, such that they would constitute speech protected by the First Amendment. *See Saulpaugh,* 4 F.3d at 143; *Quinn,* 53 F.Supp.2d at 361. However, plaintiff's single, conclusory allegation of a violation of his First Amendment rights is not sufficient to state a claim under section 1983.

## II. Failure to Obtain a Right to Sue Letter

Defendant Commission next argues that the complaint does not contain a right to sue letter with respect to plaintiff's Title VII claims, such that there has been a failure to exhaust administrative remedies. Plaintiff concedes that through oversight he failed to attach to the complaint a copy of his Title VII right to sue letter, but he has attached it to his Opposition Memorandum. That moots this issue and we decline to dismiss plaintiff's Title VII claims on this basis.

## III. Eleventh Amendment Immunity

Defendant's next asserted ground for dismissing plaintiff's complaint is based upon Eleventh Amendment immunity.

■■■■■ Under the Eleventh Amendment, States enjoy an immunity from suit in federal court by all private parties for all causes of action, including suits arising under federal statutes. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). This immunity applies to State agencies and departments, as well. Moreover, since official capacity suits are regarded as another form of claim against the State itself, the Eleventh Amendment likewise bars actions instituted against individually named State officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). The sovereign immunity doctrine, however, does not bar claims against individual defendants sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 25–27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

■■■■■ State sovereign immunity is not absolute, however: A State may consent to suit in federal court, and Congress, invoking its authority under Section 5 of the Fourteenth Amendment, may abrogate a State's Eleventh Amendment immunity in the absence of a waiver by the State. *Seminole Tribe v. Florida*, 517 U.S. 44, 54–55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Anderson v. State Univ. of New York*, 169 F.3d 117, 118 (2d Cir.1999), *pet. for cert. filed*, 67 U.S.L.W. 3717 (May 17, 1999) (No. 98–1845); *Varner v. Illinois State Univ.*, 150 F.3d at 708. Congressional intent to overturn the constitutionally guaranteed immunity of the States, however, must be "unmistakably clear in the language of the statute." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 242, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).

### A. Title VII

■■■■■ This clear congressional intent appears in the Equal Employment Opportunity Act of 1972, which amended the definition of "person" in Title VII, 42 U.S.C. § 2000e(a), to include "governments, governmental agencies, [and] political subdivisions." The 1972 amendments also amended the definition of "employee" to include those individuals "subject to the civil service laws of a state government, governmental agency or political subdivision." 42 U.S.C. § 2000e(f). *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 448–49, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Thus, plaintiff's Title VII claims against the Commission and Martin sued in his official capacity are not barred by the doctrine of sovereign immunity.[3]

### B. 42 U.S.C. §§ 1981, 1983

■■■■■ As to plaintiff's civil rights claim under 42 U.S.C. § 1981, the Eleventh Amendment is clearly a bar to plaintiff's claims against the State and State agencies. *Pennhurst State School v. Halderman*, 465 U.S. at 100, 104 S.Ct. 900. Likewise, States are not suable under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). This is also true as to State officials sued in their official capacities.[4] *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Thus, we dismiss plaintiff's claims under section 1981 and 1983 against the Commission and Martin in his official capacity.

### C. Common–Law State Claims

■■■■■ Similarly, we dismiss plaintiff's state-law claims against the State Commis-

---

3. We have already disposed of plaintiff's claims, if any, under the ADA and ADEA. However, we note that there is some district court authority to the effect that the Eleventh Amendment bars claims under the ADA against the States and their officials, *see Kilcullen v. New York*, 33 F.Supp.2d 133 although the Second Circuit has yet to rule on this issue. As to plaintiff's ADEA claim, the Second Circuit has held that the Eleventh Amendment does not bar ADEA suits against

the States. *Cooper v. New York State Office of Mental Health*, 162 F.3d 770 (2d Cir.1998), *pet. for cert. filed*, 67 U.S.L.W. 3614 (Mar. 23, 1999) (No. 98–1524).

4. There are exceptions to this blanket statement, such as when a state official is action is excess of his statutory authority, but no such allegations are set forth in this complaint to that effect.

sion and Martin in his official capacity on Eleventh Amendment immunity grounds. *See Richardson,* 180 F.3d at 447, 450. There has been no waiver of sovereign immunity by the State as to plaintiff's common-law breach of implied covenant and intentional infliction of emotional distress claims, and, therefore, these claims must be dismissed.[5] *See State v. Pierro,* 192 Conn. 98, 104, 470 A.2d 240 (1984); *Chotkowski v. State,* 240 Conn. 246, 264, n. 5, 690 A.2d 368 (1997); *Masih v. University of Connecticut,* CV 980578218, 1998 WL 599700, at *4 (Conn.Super. Aug.24, 1998).

### IV. Plaintiff's Claims Against Martin

Plaintiff has sued defendant Martin in his official and individual capacities. All of plaintiff's claims against Martin have been dismissed pursuant to the rulings above except for plaintiff's state-law claims and his disparate treatment claims against Martin individually under Title VII and sections 1981 and 1983, and his official capacity claims under Title VII.

### A. Title VII

 With respect to plaintiff's Title VII claim against Martin in his individual capacity, Martin does not fall within the definition of "employer" and, therefore, he is immune from Title VII liability under *Tomka v. Seiler Corp.,* 66 F.3d at 1313 (holding that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII"). Moreover, this Court has previously held that just as Title VII suits may not be brought against supervisory employees sued in their individual capacity, the better-reasoned cases likewise hold that official capacity suits against these individuals are barred. *See McBride v. Routh,* 51 F.Supp.2d 153, 157 (D.Conn.1999) (and cases cited therein). Thus, plaintiff's Title VII claims against Martin are dismissed.

### B. Remaining Claims Against Martin

 Defendants also argue that this Court lacks personal jurisdiction over Martin since he has never effected service of process upon him. Plaintiff concedes that no personal service was ever made on Defendant Martin personally nor does he assert that he has served Martin by any other method authorized by Fed.R.Civ.P. 4(e). Therefore, plaintiff's remaining claims against Martin in his individual capacity must be dismissed. *See Martin v. New York Dept. of Mental Hygiene,* 588 F.2d 371, 373 (2d Cir.1978); *Banerjee v. Roberts,* 641 F.Supp. 1093, 1099 (D.Conn. 1986).

 Plaintiff argues, however, with respect to his official capacity claims against Martin, that the service effected upon an administrative assistant at the Commission—who allegedly stated that she was duly authorized to accept service for Martin—constituted proper service on Martin in his official capacity and that Martin, in his official capacity, is in default. Under Rule 4(j)(2), service upon a State, municipal organization, or other governmental organization is to be effected by delivering a copy of the summons and complaint to the "chief executive officer or by serving the summons and complaint in the manner prescribed by the law" of Connecticut.[6] Plaintiff has produced a return of service, showing that the Secretary for the Acting Chief Executive Commissioner was served with the complaint against Martin. The Acting Chief Executive Commissioner would seem to qualify as the chief executive officer for purposes of Rule 4(j)(2).

---

5. Although not addressed by the parties, the Court further questions whether plaintiff's complaint has sufficiently set forth a cause of action for either breach of the covenant of good faith and fair dealing, *see Bennett v. Beiersdorf, Inc.,* 889 F.Supp. 46, 49 (D.Conn. 1995), or for intentional infliction of emotional distress. *See DeLaurentis v. City of New Haven,* 220 Conn. 225, 266–67, 597 A.2d 807 (1991); *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986).

6. Conn.Gen.Stat. § 52–64 requires that service upon any State officer or employee must be made upon the Attorney General, which unquestionably was not done in this case.

Assuming that his Secretary was authorized to accept service on behalf of the Chief Executive Commissioner, this service might have been effective. However, we need not decide that issue because at the time she was served, Martin was no longer at the Commission. This Court has held that such service, once an individual leaves a State agency or commission, is ineffective. *See Pinto v. Connecticut Dept. of Environmental Protection,* No. CIV B–87–523(JAC), 1988 WL 47899, *4 (D.Conn. Mar.24, 1988). There has been no evidence submitted that the Secretary had been otherwise authorized to accept service on Martin's behalf after he left the Commission. (Defendant's papers state that Martin's whereabouts are unknown and no one has appeared on his behalf individually).

Thus, we hold that plaintiff's claims against Martin, in both his individual and official capacities, must be dismissed for lack of personal jurisdiction since there has been no service of process on Martin.

*V. Exhaustion of Remedies Under Collective Bargaining Agreement*

Defendant next asserts that plaintiff's complaint should be dismissed for failure to exhaust remedies under the collective bargaining agreement. Focusing on plaintiff's complaints concerning his alleged discriminatory treatment with respect to his requested schedule change, defendants argue that disputes concerning schedule changes are part of his Union's collective bargaining agreement with the Commission. Article 17, Section Two, of that agreement states that schedules may be rearranged by mutual agreement between the employee and management "to accommodate needs in areas as child care, transportation or participation in an educational program." Plaintiff never grieved his claim which, considering that he was able to get his schedule changed more rapidly than Union procedures would have allowed, is understandable. Defendant cites cases supporting the concept that the collective bargaining contract remedies must be exhausted before lawsuits are filed.

Article 15, Section Ten of the Agreement provides that "disputes of claimed unlawful discrimination should be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the CCHRO." In light of this provision in the Agreement, once a discrimination complaint had been filed with the Commission, it would appear that the requirement of recourse to the grievance procedures was eliminated. (The grievance procedure here has four steps to it, with arbitration being only the final one). Absent further briefing we are not prepared to hold that this case cannot continue until grievance practices have been exhausted. We do agree that plaintiff's complaints concerning his schedule change and his evaluations are certainly more appropriate for a union grievance than a Federal law suit. However, that is not the sole basis for plaintiff's disparate treatment claim under Title VII, and we decline to dismiss plaintiff's Title VII complaint on the ground that he failed to exhaust his collective bargaining remedies. *See Phillips v. CIGNA Investments, Inc.,* 27 F.Supp.2d 345, 348–50 (D.Conn.1998) (discussing the issue of mandatory arbitration of statutory employment claims).

*VI. Failure to Prosecute*

Last, defendants assert that plaintiff's complaint should be dismissed under Fed. R.Civ.P. 41(b) for failure to prosecute. Rule 41(b) provides for the involuntary dismissal of an action by a plaintiff who fails to prosecute his case. This case has not moved rapidly. However, it is a 1999 case and both parties applied for a settlement conference before a Magistrate Judge, a procedure which took several months. We do not view the delay in prosecution to be sufficiently egregious as to warrant dismissal of the action. Therefore, we deny defendants' motion to dismiss under Rule 41(b).

*CONCLUSION*

Accordingly, defendant's Motion to Dismiss [**Doc. # 14**] is GRANTED IN PART AND DENIED IN PART, as follows:

(1). All claims against defendant Martin are dismissed.

(2). Plaintiff's claims under the ADA and ADEA are dismissed.

(3). Plaintiff's claims against the Commission for hostile work environment and retaliation under Title VII are dismissed and plaintiff is granted leave to file an amended complaint within 21 days of this decision.

(4). Plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 and his common-law State claims against the State Commission are dismissed on sovereign immunity grounds.

(5). Defendant's Motion to Dismiss plaintiff's disparate treatment claims under Title VII against the Commission is DENIED.

SO ORDERED.