**Goffrey OLIVER, et al Plaintiffs,**

**v.**

**THE UNIVERSITY OF CONNECTI-CUT HEALTH CARE and Leslie S. Cutler Defendants.**

**No. 3:98CV01933 (GLG).**

United States District Court,
D. Connecticut.

Dec. 1, 2003.

See also, 292 F.Supp.2d 412, 2003 WL 22908137, 292 F.Supp.2d 385, 2003 WL 22908491, 292 F.Supp.2d 425, 2003 WL 22911224.

John Rose, Jr., Levy & Droney, P.C., Farmington, CT, for Plaintiffs.

Carla R. Walworth, Mary C. Dollarhide, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, William N. Kleinman, Attorney General's Office, Farmington, CT, for Defendants.

Peter M. Schultz, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Movant/Defendants.

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GOETTEL, District Judge.

Pending before the court is defendants' motion for summary judgment on all claims asserted by plaintiff Goffrey Oliver in his first amended complaint. For the reasons stated below, the court *grants* defendants' motion for summary judgment (Doc. # 101) on all counts, *except* for the hostile work environment claim in Count Seven.

## I. Procedural History and Facts

On February 23, 1999, plaintiff Goffrey Oliver[1] ["Oliver"], and three co-workers filed an amended seven-count complaint against the University of Connecticut Health Center ["Health Center"] and Leslie S. Cutler ["Dr. Cutler"]. In the first count, plaintiff alleges that the Health Center engaged in hiring and employment discrimination based on race, color and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and state law,[2] without specifying which law. In the second count, plaintiff alleges that the Health Center denied him equal rights under the law in violation of 42 U.S.C. § 1981. The third count asserts a claim against Dr. Cutler— violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983. In the fourth count, plaintiff alleges that Dr. Cutler's discriminatory actions violated plaintiff's due process rights. In the fifth count, plaintiff asserts a breach of implied contract claim against the Health Center. In the sixth count, plaintiff asserts a claim of intentional infliction of emotional distress against the Health Center. In the seventh count, plaintiff alleges that the Health Center created a hostile work environment. Plaintiff seeks both compensatory and punitive damages. (Pl.'s Am. Compl.).

■ As an initial matter, defendants, in their reply brief, contend that plaintiff has failed to comply with the District of Connecticut's local rules regarding motions for summary judgment. A party opposing a motion for summary judgment shall submit a document entitled "Local Rule 56(a)2 Statement," which must include "a list of each issue of material fact as to which it is contended there is a genuine issue to be tried." D. Conn. L. Civ. Rule 56(a)2. "Each statement of material fact in a Local Rule 56(a) Statement by a movant or opponent must be followed by a citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." D. Conn. L. Civ. Rule 56(a)3. Defendants complain that plaintiff's submission of twenty-five material facts does not contain any citation to either an affidavit of a witness competent to testify as to the facts at trial or other admissible evidence pursuant to the local rules. (Defs.' Reply Br. at 4). Thus, defendants conclude that all the material facts set forth in their Local Rule 56(a)1 Statement should be deemed admitted and that the court should grant summary judgment in their favor. (Id.).

In reviewing the parties' submissions, the court agrees that plaintiff's Local Rule 56(a)2 Statement does not comply with the local rules. See Doc. # 119.

In accordance with the Local Rule, this court has repeatedly held that the opposing party's failure to submit a timely Local Rule 56(a)2 Statement will result in the court's deeming admitted all facts set forth in the moving party's Local Rule 56(a)1 Statement. See, e.g., Booze v. Shawmut Bank, 62 F.Supp.2d 593, 595 (D.Conn. 1999); Trzaskos v. St. Jacques, 39 F.Supp.2d 177, 178 (D.Conn.1999). Likewise, the court will deem admitted for purposes of this motion all facts set forth in defendants' Local Rule 56(a)1 Statement. Nevertheless, because the court is considering these facts in ruling on a motion for summary judgment, they will be viewed in the light most favorable to plain-

---

1. The other plaintiffs are Elsa Delrio, Yvonne Ozenne, and Myriam Sanchez. The court will address defendants' motions for summary judgment against each plaintiff's claims in separate rulings.

2. Defendants assume this to be Conn. Gen. Stat. § 46a–70, the Connecticut Fair Employment Practices Act ["CFEPA"]. Plaintiff did not raise any objection to this assumption in his opposition briefs.

tiff with all reasonable inferences drawn in favor of plaintiff, as the non-moving party.

A brief summary of the factual background is in order. Defendant Health Center is an educational, research, clinical and health care facility comprised of nine distinct divisions. (Defs.' Statement at ¶ 1). Defendant Dr. Cutler was the Chancellor and Provost for Health Affairs at the Health Center from February 1992 through June 2000; he currently is a part-time Business Development Officer at the University of Connecticut's Center for Science and Technology Commercialization. (*Id.* at ¶ 2). Plaintiff Oliver, an African American male and current employee, commenced his employment with the Health Center in May 1984 and has been continuously employed by the Health Center since that date, except for a several month period in the 1980's. (*Id.* at ¶ 3). At all relevant times, plaintiff has worked in the Health Center's Heating, Ventilation and Air Conditioning ["HVAC"] Department, which is part of the Facilities Management Division. (*Id.* at ¶ 4).

During his deposition, plaintiff cited three alleged instances of discrimination. First, he alleges that he was denied a promotion as supervisor in the HVAC Department, but later admitted that he never applied for the position. (*Id.* at ¶¶ 5 & 6). Second, plaintiff claims that he received a one day "paper" suspension in 1997 because of an argument with a co-worker; however plaintiff was not debited any work time or pay. (*Id.* at ¶¶ 5 & 7). The white co-worker involved in the 1997 argument with plaintiff also received a one day "paper" suspension. (*Id.* at ¶ 8). Third, plaintiff alleges that he was demoted from his current position of Qualified Craft Worker to Skilled Maintainer for a period of two months. (*Id.* at ¶ 5). On December 12, 1997, plaintiff received a memo from his supervisor that all Qualified Craft Workers in the HVAC Department would

be required to obtain a "Universal refrigerant certificate" by April 15, 1998. (*Id.* at ¶ 9). The memo stated that failure to obtain the required certificate by the deadline could result in demotion, transfer or separation from service with the Health Center. The memo offered several reasons for the certification requirement, including the Health Center's desire "to meet the changing operational needs in the HVAC/R areas and to comply with the Clean Air Act of 1990 and its amendments." (*Id.* at ¶ 10). Plaintiff did not obtain the certificate by the required deadline and admits that he failed the test "at least five times." (*Id.* at ¶ 11). In December 1998, plaintiff was reclassified to the position of Skilled Maintainer and advised that he would be reinstated to his former position if he obtained his Universal refrigerant certificate by June 4, 1999. (*Id.* at ¶ 12). On February 10, 1999, plaintiff took the certification test and passed. He was reinstated as a Qualified Craft Worker and has remained in that position until the present date. (*Id.* at ¶ 13). Plaintiff admits that the only other African American in the HVAC Department at the time of plaintiff's reclassification was not reclassified. (*Id.* at ¶ 14).

The word "retaliation" does not appear in either Count One or Count Seven of the Complaint. (*Id.* at ¶ 15). In September 1997, plaintiff filed a complaint with the Connecticut Commission on Human Rights ["CHRO"], alleging that he had been discriminated against and subject to a hostile work environment on account of his race (black) and sex (male). (*Id.* at ¶ 16).

At his deposition, plaintiff testified that he observed the following comments from the mid 1980's through the late 1990's: 1) he was called a "monkey" at least ten times by two individuals, including one time by his supervisor; the other times by a co-worker and 2) he observed seven in-

stances of anonymous graffiti in the bathroom and on HVAC machinery referring to him as a "nigger." (*Id.* at ¶¶ 17 & 19).

Plaintiff states that it has been at least five years since he has been subjected to racial harassment of any kind. (*Id.* at ¶ 18). Plaintiff testified that at the time of his employment he was advised that he could lodge a complaint with the Affirmative Action office or with Human Resources if he experienced any racial harassment. (*Id.* at ¶ 19). Plaintiff does not recall if he reported that his co-worker called him a "monkey." (*Id.* at ¶ 19). During his deposition, plaintiff testified that before the CHRO in 1997, Dr. Cutler made a statement to the effect that some of the employees at the Health Center who were complaining about racism "weren't capable of doing their jobs." Other than this statement, plaintiff stated that he has no other examples of alleged discrimination or harassment by Dr. Cutler. (*Id.* at ¶ 21).

## II. Standard of Review

The standard for summary judgement is well established. The moving party is entitled to summary judgment if it demonstrates that there is no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## III. Discussion

### A. Eleventh Amendment

■ In their memorandum of law in support of their motion for summary judgment, defendants contend that plaintiff's CFEPA claim in Count One, the § 1981 claim in Count Two, the breach of implied contract in Count Five and the claim of intentional infliction of emotional distress in Count Six, all against the Health Center, are barred by the Eleventh Amendment. (Defs.' Mem. at 5).

Surprisingly, plaintiff does not address this argument in his memorandum in opposition to defendants' motion. The court notes that in both the first amended complaint and in plaintiff's aforementioned memorandum, the Health Center is described as an agency of the state. (Pl.'s Am. Compl. at 8 and Pl.'s Mem. at 9).

■ The Eleventh Amendment bars suits for money damages against a state or its agencies unless the state has unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The courts have consistently held that Connecticut state universities and their boards of trustees are entitled to

claim immunity under the Eleventh Amendment. *Brown v. W. Conn. State Univ.,* 204 F.Supp.2d 355, 361 (D.Conn. 2002). This immunity also extends to state officials sued in their official capacities. *See Gaynor v. Martin,* 77 F.Supp.2d 272, 281 (D.Conn.1999).

■■■ A state may be subject to suit in federal court one of two ways: (1) Congress can divest a state of immunity through a statutory enactment, as it has done with Title VII; or (2) a state may waive its immunity and agree to be sued in federal court. *Close v. New York,* 125 F.3d 31, 39 (2d Cir.1997). However, a state may consent to suit in its own courts without consenting to suit in federal court. *Smith v. Reeves,* 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900).

Under Connecticut law, Conn. Gen.Stat. § 46a–100 [3], Connecticut waived its immunity for suit in state court for CFEPA claims. But it has not clearly expressed a waiver to suit in federal court. Therefore, the courts of this district have consistently found that CFEPA claims against the state or its agents are barred by the Eleventh Amendment. *See Lyon v. Jones,* 168 F.Supp.2d 1, 6 (D.Conn.2001). Count One contains a CFEPA claim against the Health Center, an agent of the State of Connecticut, which is protected by immunity under the Eleventh Amendment. Accordingly, summary judgment in favor of the defendants is granted as to the CFEPA claim in Count One.

## B. Connecticut Common–Law Claims

■■■ The state also has immunity under the Eleventh Amendment for state common-law claims. *See Pennhurst,* 465 U.S. at 106, 104 S.Ct. 900, ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law"), and *Cates v. Conn. Dep't of Corr.,* No. 3:98CV2232(SRU), 2000 WL 502622, at *12 (D.Conn.Apr.13, 2000). Applying the same reasoning used in analyzing the CFEPA claim, the Health Center, as an agent of the state, is protected by the Eleventh Amendment. Therefore, the court grants summary judgment in favor of the defendants on Count Five for breach of implied contract and Count Six for intentional infliction of emotional distress.

## C. Title VII

Defendants also maintain that the Title VII claims with respect to promotional opportunities and job advancement in Count One and Count Seven fail as a matter of law because plaintiff did not establish that he was discriminated against on the basis of his race or color, subjected to a hostile work environment or retaliated against for engaging in activity protected under Title VII. (Defs.' Mem. at 8).

### 1. Failure to Promote

First, defendants argue that plaintiff fails to make out a *prima facie* claim that he was denied promotions. (Defs.' Mem. at 9).

These claims are analyzed using the three-step, burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff must first establish a *prima facie* case by showing (1) that he was member of a protected class, (2) that he was qualified for the position

---

**3.** Conn. Gen.Stat. § 46a–100 provides:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission ... [for] any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford. ...

for which he applied, (3) that he was denied the position and (4) circumstances under which give rise to an inference of discrimination. Defendants must then articulate "a legitimate, nondiscriminatory reason" for giving the positions to the successful applicants. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

 The court now turns to whether plaintiff is able to establish a case of discrimination as to his non selection as HVAC supervisor. "To establish a prima facie case of discriminatory failure to promote, a plaintiff must allege that she or he applied for a specific position or positions and was rejected therefrom, rather than merely asserting that on several occasions she or he generally requested promotion." *Kinsella v. Rumsfeld,* 320 F.3d 309, 314 (2d Cir.2003). At his deposition, plaintiff testified that he never submitted an application for a supervisory position because the job vacancies were filled by the time he completed the applications. (Pl.'s Dep. at 62). Thus, plaintiff does not set forth a *prima facie* case of discrimination as to his non selection as a HVAC supervisor.

 Second, plaintiff claims that he received a one day "paper" suspension in 1997 because of an argument with a co-worker. The white co-worker also received a one day "paper" suspension. (Defs.' Appendix of Exhibits, G). "To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a material loss of benefits, significantly diminished material responsibilities, or other indices … unique to a particular situation." *Williams v. R.H. Donnelley, Inc.,* 199 F.Supp.2d 172, 178 (S.D.N.Y.2002). Plaintiff's one-day suspension did not con-

stitute a materially adverse change because plaintiff testified that he was not debited any work time or pay. (Pl.'s Tr. at 130). Therefore, plaintiff fails to make a *prima facie* claim that he was demoted on the basis of race in connection with the 1997 incident.

 Third, plaintiff alleges that he was demoted from his current position of Qualified Craft Worker to Skilled Maintainer for a period of two months. The undisputed facts demonstrate that plaintiff cannot establish a *prima facie* case of discrimination with respect to his reclassification. On December 12, 1997, plaintiff received a memo from his supervisor that all Qualified Craft Workers in the HVAC Department would be required to obtain a "Universal refrigerant certificate" by April 15, 1998 in order "to meet the changing operational needs in the HVAC area and to comply with the Clean Air Act of 1990 and its amendments." (Defs.' 56(a)(1) Statement at ¶¶ 9 & 10). The memo stated that failure to obtain the required certificate by the deadline could result in demotion, transfer or separation from service with the Health Center. (*Id.* at ¶ 10). Plaintiff did not obtain the certificate by the required deadline and admits that he failed the test "at least five times." (*Id.* at ¶ 11). In December 1998, plaintiff was reclassified to the position of Skilled Maintainer and advised that he would be reinstated to his former position if he obtained his Universal refrigerant certificate by June 4, 1999. (*Id.* at ¶ 12). On February 10, 1999, plaintiff took the certification test and passed. He was reinstated as a Qualified Craft Worker and has remained in that position until the present date. Therefore, this court concludes that plaintiff's claims fails as a matter of law. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's failure to promote claim in Count One.

### 2. Retaliation Claim

Next, defendants contend that plaintiff's claim of retaliation fails as a matter of law because plaintiff failed to allege "retaliation" in any of the seven counts in his first amended complaint. (Defs.' Mem. at 17).

■■■■ Title VII provides in part that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e–3(a).

"Retaliation claims under Title VII are tested under a three-step burden shifting analysis. First, the plaintiff must make out a *prima facie* case of retaliation. Second, the defendant then has the burden of articulating a legitimate, non-retaliatory reason for the complained of action. Third, if the defendant meets its burden, plaintiff must adduce evidence sufficient to raise a fact issue as to whether [the employer]'s reason was merely a pretext for retaliation."

*Quinn*, 159 F.3d at 768–769 (numerous citations and internal quotation marks omitted).

In order for plaintiff to make out a *prima facie* case of retaliation, he must demonstrate: that he participated in a protected activity; that the adverse employment action disadvantaged him; and that there is a causal connection between the protected activity and the adverse employment action. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Plaintiff claims that he was retaliated against after he filed a complaint with the CHRO on September 9, 1997. (Pl.'s Dep. at 124). In support, plaintiff testified that co-workers were told to stay away from him, that he received a one day "paper suspension due to an argument with a co-worker, and that he withdrew a grievance he filed with respect to the one day suspension because he was threatened with loss of his job if he did not." (*Id.* at 127–132).

■■■ A plaintiff sustains an adverse employment condition, if "he or she endures a materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir.2000)(internal quotation marks omitted). There must be a material loss of benefits or a change in responsibilities to constitute a setback in plaintiff's career. *Id.* at 641–42.

With respect to the comments by co-workers, plaintiff fails to demonstrate how these statements resulted in a material loss of benefits or other conditions of his employment. Next, the court has discussed the one day paper suspension in detail which did not result in a materially adverse change in employment. See section C.1. As to the withdrawn grievance, plaintiff does not recall who threatened his job, but testified that it may have been someone from the workers' union. (Pl.'s Dep. at 133–134). As to the demotion in December 1998 from plaintiff's current position of Qualified Craft Worker to Skilled Maintainer for a period of two months, which the court has discussed at length earlier in this ruling, plaintiff fails to establish that there is a causal connection between his filing a CHRO complaint in September 1997 and the job reclassification. See section C.1. Therefore, the court grants defendants' motion for summary judgment as to plaintiff's retaliation claims in Count One.

### 3. Hostile Work Environment

■■■ Plaintiff relies on the following to support his claim of a hostile work environment. At his deposition, plaintiff testified about the following: 1) he was called a "monkey" at least ten times by two indi-

viduals, including one time by his supervisor; the other times by a co-worker from the mid 1980's through the late 1990's; 2) a threat by the chief union steward regarding plaintiff made to plaintiff's ex-wife; and 3) he observed approximately seven instances of anonymous graffiti of a sexual nature in the bathroom regarding Oliver and his wife and on HVAC machinery referring to him as a "nigger." (Pl.'s Dep. at 43–61).

■ In order to prevail on the hostile work environment claim under Title VII as set forth in Count Seven, plaintiff must establish two elements: (1) a hostile work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile work environment to the employer. *See Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir.1998), and *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997).

■ To establish the first element—the existence of a hostile work environment plaintiff must prove that the workplace was permeated with "discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)(internal citations and quotation marks omitted). The hostile environment must be one that a reasonable person would find hostile or abusive, and that the victim did, in fact, perceive to be so. *Id.* at 21–22, 114 S.Ct. 367. The Supreme Court in *Harris* held that the courts should look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Id.* at 23, 114 S.Ct. 367. The incidents

"must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 n. 1, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)(internal citation and quotation marks omitted). "[O]ne of the critical inquiries in a hostile environment claim must be the *environment.* Evidence of a general work atmosphere . . .—as well as evidence of specific hostility directed toward the plaintiff—is an important factor in evaluating the claim." *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir.1997)(internal quotations and emphasis omitted). The Supreme Court has repeatedly emphasized that simple teasing, offhand comments, and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms and conditions of employment. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

■ Second, "plaintiff must show that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Perry v. Ethan Allen*, 115 F.3d at 149; *Murray v. New York Univ. College of Dentistry*, 57 F.3d 243, 249 (2d Cir.1995). "An employer who has notice of a discriminatorily abusive environment in the workplace has a duty to take reasonable steps to eliminate it." *Id.*

■ However, "employers are presumptively liable for all acts of harassment perpetrated by an employee's supervisor." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767 (2d Cir.1998). To avoid liability, an employer must assert as an affirmative defense, that (1) the employer exercised reasonable care to prevent and promptly correct any harassment by such a supervisor, and (2) the employee unreasonably failed to avail himself of any cor-

rective or preventative opportunities provided by the employer or to avoid harm otherwise. *Id.*

In this case, there are genuine issues of material fact as to whether plaintiff had a reasonable avenue of complaint and whether a specific basis exists for imputing the conduct that created the hostile work environment to the employer. First, it is undisputed that one of the racial remarks was made by plaintiff's supervisor, Tom McMahon. (Pl.'s Dep. at 52–53). Mr. McMahon is currently one of plaintiff's two supervisors. (*Id.* at 24–25). Second, as to the incidents of racial graffiti on the bathroom walls, at his deposition, plaintiff testified that after he first discovered the racial graffiti, he reported it to the Police Department, which in turn contacted Mr. Savage of the Affirmative Action office at the Health Center. (*Id.* at 35–38). Plaintiff testified that Savage remarked to him that the "guys are just having fun." (*Id.*). Even after the Affirmative Action office was notified, the alleged harassment persisted and a second incident occurred. (*Id.* at 39). After the second incident, the Health Center did not immediately repaint the walls. (*Id.*). A reasonable jury could find that the employer knew of the harassment but did relatively little to stop it. Accordingly, summary judgment as to the plaintiff's hostile environment claim in Count Seven is denied.

## D. Claims against Dr. Cutler

Count Three and Count Four assert claims against Dr. Cutler in his individual capacity as the former Chancellor of the Health Center. Defendants move for summary judgment on these claims because they contend that Dr. Cutler was not personally involved in any alleged act of discrimination and that because plaintiff was not denied any procedural or substantive due process clause rights as alleged. (Defs.' Mem. at 26–27). Defendants also claim that Dr. Cutler acted in an objective-

ly reasonable manner with respect to plaintiff's employment at the Health Center and that therefore he is entitled to qualified immunity. (*Id.*).

### 1. Section 1983 Claim

 Courts in this Circuit hold that personal involvement of a defendant in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). Plaintiff testified that Dr. Cutler was not one of his supervisors. (Pl.'s Dep. at 24–26). Furthermore, plaintiff stated that Dr. Cutler did not personally harass plaintiff on the basis of his race or national origin. (*Id.* at 98). The fact that Dr. Cutler was in a high position of authority is an insufficient basis for the imposition of personal liability. *McKinnon,* 568 F.2d at 934.

### 2. Section 1981 Claim

 In plaintiff's opposition memorandum, he claims that Dr. Cutler had one meeting with the People With Voices Committee, and that Dr. Cutler attended a 1998 meeting before the CHRO, at which he said "that we're not capable of doing our jobs good." (Pl.'s Dep. at 93–94). Plaintiff maintains that these incidents evidence Dr. Cutler's personal involvement and are thus bases for imposing liability. (Pl.'s Mem. at 41–42). Based on the court's reading of the amended complaint, it is unclear whether plaintiff is asserting either a procedural or substantive due process claim.

> Due process claims may take either of two forms: procedural due process or substantive due process. Procedural due process claims concern the adequacy of the procedure provided by the governmental body for the protection of liberty or property rights of an individual. Substantive due process claims, on

the other hand, concern limits on governmental conduct toward an individual regardless of procedural protections. *DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997).

As to procedural due process, "[a] plaintiff claiming due process protection under the Fourteenth Amendment must possess a 'property' or 'liberty' interest that is somehow jeopardized by governmental action, necessitating a pre- or postdeprivation hearing as a safeguard." *Dobosz v. Walsh,* 892 F.2d 1135, 1140 (2d Cir.1989). Government acts defaming a person may implicate a liberty interest and may be actionable upon evidence of serious harm, such as a loss of employment. *Id.*

Plaintiff does not assert in either his deposition or in his affidavit, that he was denied a promotion or pay raise as a result of any comments or actions by Dr. Cutler. Plaintiff has not presented sufficient evidence to create a genuine issue of material fact that the alleged actions taken by Dr. Cutler deprived him of a constitutionally protected property interest. Thus, the court grants the defendants' motion for summary judgment as to plaintiff's procedural due process claim.

As to substantive due process, "[t]he Supreme Court has enunciated two alternative tests by which substantive due process is examined. Under the first test, the plaintiff must prove that the governmental body's conduct 'shocks the conscience.'" *DeLeon,* 981 F.Supp. at 734. "[W]ith regard to [the] 'shocks the conscience' test that [t]he acts must do more than offend some fastidious squeamishness or private sentimentalism ...; they must be such as to offend even hardened sensibilities, or constitute force that is brutal and offensive to human dignity." (Internal quotation marks omitted.) *Id.,* at 734–35. "[M]alicious and sadistic abuses of government power that are intended only to oppress or to cause injury and serve no legitimate government purpose unquestionably shock the conscience." *Russo v. Hartford,* 184 F.Supp.2d 169, 196 (D.Conn. 2002).

Here, plaintiff has not presented any evidence to show that defendants engaged in any conduct, that, as a matter of law, "shocks the conscience." *See Catanzaro v. Weiden,* 188 F.3d 56, 64 (2d Cir.1999)(plaintiff "must show that the government action was arbitrary, conscience-shocking, or oppressive in a constitutional sense, and not merely incorrect or ill-advised").

"Under the second test, the plaintiff must demonstrate a violation of an identified liberty or property interest protected by the Due Process Clause." *DeLeon,* 981 F.Supp. at 734. The court has already determined that the plaintiff has failed to create a genuine issue of material fact as to the existence of a constitutionally protected property or liberty interest and that he was the subject of conduct that "shocks the conscience." Thus, the court concludes that plaintiff's claims against Dr. Cutler fail as a matter of law. Therefore, the court need not reach defendants' argument that Dr. Cutler enjoys qualified immunity from suit. Accordingly, the court grants the defendants' motion for summary judgment as to Count Three and Count Four.

### IV. Conclusion

For the reasons stated above, the court *grants in part and denies in part* defendants' Motion for Summary Judgment (Doc. # 101). It is granted on all counts, except for the hostile work environment claim in Count Seven of plaintiff Oliver's first amended complaint.

SO ORDERED.